

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-30-2009

# Underhill Inv Corp v. Fixed Income Discoun

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2281

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Underhill Inv Corp v. Fixed Income Discoun" (2009). *2009 Decisions*. Paper 1646.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1646

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2281
_____

UNDERHILL INVESTMENT CORP., ET AL,
Appellants

v.

FIXED INCOME DISCOUNT ADVISORY COMPANY

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 06-999)
(Judge: Honorable Sue L. Robinson)
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 6, 2009

Before: BARRY and GREENBERG, <u>Circuit Judges</u>,
and ACKERMAN, <u>Senior District Judge</u>.[*]

(Filed: March 30, 2009)

_____

OPINION OF THE COURT
_____

---

[*]Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

1

ACKERMAN, Senior District Judge.

This is a finder's fee case arising out of two introductions by Stephen Peskoff, through Underhill Investment Corporation (collectively, "Peskoff"), to the Fixed Income Discount Advisory Company ("FIDAC"). As a result of Peskoff's introductions, FIDAC worked with two companies, Gen Advisers, LLC ("Gen Advisers") and Sentry Select Capital Corporation ("Sentry"), to develop investment vehicles, but Peskoff claims he was not adequately compensated for the introductions and his consulting services provided in connection therewith. The District Court granted summary judgment in favor of FIDAC, finding that Peskoff failed to present genuine disputes of material fact as to both his quantum meruit and promissory estoppel claims. For the following reasons, albeit on a different ground than advanced by the District Court, we will affirm.

**I.**

FIDAC is a registered investment advisor, incorporated in Delaware, with offices in New York. Prior to June 2004, FIDAC was privately held, with most of its stock owned by Michael Farrell, FIDAC's chairman, chief executive officer, and president. In June 2004, FIDAC was acquired by Annaly Mortgage Management, Inc. ("Annaly"), a publicly-traded company. Farrell is also the current chairman, chief executive officer, and president of Annaly. Peskoff is a Virginia resident who maintained his business office in Virginia. Underhill is Peskoff's dissolved, closely-held corporation; he was its sole shareholder, officer, and director. Peskoff used Underhill to offer his business and

financial consulting services.

Prior to the transactions at issue in this case, Peskoff and Farrell were involved in several business dealings together. In 1996 or 1997, Peskoff worked as a consultant to the Virginia-based investment banking firm Friedman Billings Ramsey ("Friedman"), which was doing a project for Annaly. Peskoff maintained an office in the Friedman office suite, though Peskoff was not a Friedman employee, and it was around this time that Farrell and Peskoff first met. Over the next four years, Friedman did several financing projects for FIDAC. These projects resulted in consulting fees of approximately $1 million for Peskoff, paid to him by FIDAC.

In early 2000, Peskoff called Farrell, at Friedman's request, to see whether Farrell would meet with Friedman executives to discuss FIDAC's potential management of a real estate investment trust ("REIT") that Friedman held. Peskoff arranged the call with FIDAC, and shortly thereafter, FIDAC agreed to act as Friedman's REIT advisor. On or about February 15, 2000, Farrell sent Peskoff a letter (the "Letter") with a subject labeled "Consulting Engagement." The Letter stated in pertinent part that Peskoff "shall provide FIDAC with . . . consulting services as they shall agree from time to time[.]" (JA at 37.) Included in the Letter were numbered paragraphs entitled "Compensation" (unspecified), "Termination," and "Assignability." (*Id.* at 37-38.) The Letter also stipulated that "This Agreement is governed by and will be construed in accordance with the laws of the State of Delaware." (JA at 38.) Both parties signed the Letter. Subsequently, FIDAC paid

3

Peskoff twenty percent of its management fees earned from its relationship with Friedman, with payments occurring between May 2000 and May 2002, while FIDAC managed the Friedman REIT.

In the fall of 2001, Peskoff met Ernie Baptista, a principal of Gen Advisors, a Rhode Island company, at an investment banking conference. Baptista, per Peskoff's suggestion, contacted Farrell. In or around November 2001, Peskoff arranged the first meeting between Baptista and Farrell, which only Baptista and Farrell attended at FIDAC's New York offices. After the initial meeting, Peskoff attended a second meeting that took place at FIDAC's offices in early 2002. On October 10, 2002, after several additional discussions, FIDAC and Gen Advisors entered into an agreement to work together on an investment product. Later that year, after the Gen Advisors' introduction, Peskoff introduced FIDAC to Raniero Corsini of Sentry, whom Peskoff met in Canada. FIDAC subsequently entered into a similar business arrangement with Sentry.

Peskoff claims that FIDAC never appropriately compensated him for his introductions of Gen Advisers and Sentry. On December 30, 2006, Peskoff filed an Amended Complaint in the District of Delaware seeking recovery of fees under theories of quantum meruit and promissory estoppel.[1] At the close of discovery, both parties

---

[1] Peskoff does not pursue a breach of contract claim because he does not consider the Letter to be a formal contract: "The only reason that Peskoff's claims sound in quasi-contract rather than breach of contract is because, when drafting the [Letter], FIDAC's President and CEO failed to provide a sufficiently specific monetary term for Peskoff's compensation." (Peskoff Br. at 6.)

moved for summary judgment.  On March 31, 2008, the District Court granted FIDAC's

motion for summary judgment and denied Peskoff's motion for partial summary

judgment.  Peskoff now appeals, arguing that the District Court inappropriately decided

genuine issues of material fact.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332, and this Court

has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

## II.

This Court reviews questions of law *de novo*.  *United States v. Hendricks*, 395

F.3d 173, 176 (3d Cir. 2005).  "We exercise plenary review over the District Court's grant

of summary judgment" and "apply the same standard that the District Court should have

applied."  *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001).

A court should grant summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).

## III.

### A.

First, the Court must determine which law applies to the claims against FIDAC, a

matter which the parties dispute.  FIDAC asserts that the Court should apply New York

law to deny Peskoff's appeal on statute of frauds grounds.  By contrast, Peskoff argues

that the Court should employ Delaware law, under which this Court need not reach

FIDAC's statute of frauds argument.[2]  To resolve this issue, "we must determine whether

a true conflict exists" between the application of Delaware and New York law.  *Berg*

*Chilling Sys. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).  Where the laws of the two

jurisdictions would produce the same result on the particular issues presented, there is a

"false conflict," and the Court should avoid the choice-of-law question.  *Williams v.*

*Stone*, 109 F.3d 890, 893 (3d Cir. 1997).

New York's Statute of Frauds provides, in pertinent part, that no agreement for

compensation for services rendered in "procuring an introduction to a party to [a]

transaction" is enforceable unless it or some note or memorandum is in writing.  N.Y.

Gen. Oblig. Law § 5-701(a)(10).  Unlike New York law, Delaware law does not require

that finder's fee agreements be in writing.  *See* 6 Del. C. § 2714.  Thus, there is a conflict

of law and this Court must determine which law to apply.

"The conflict of laws rules to be applied by the federal court in Delaware must

conform to those prevailing in Delaware's state courts."  *Klaxon Co. v. Stentor Elec. Mfg.*

*Co.*, 313 U.S. 487, 496 (1941); *see also Day & Zimmermann, Inc. v. Challoner*, 423 U.S.

3, 4 (1975).  The Supreme Court of Delaware, in *Travelers Indemnity Co. v. Lake*,

adopted the Restatement (Second) of Conflicts of Law (the "Restatement 2d.") for

---

[2] The District Court did not decide the choice of law issue because it decided summarily that no conflict existed.  (JA at 17.)

6

choice-of-law questions. 594 A.2d 38, 41, 47 (Del. 1991). Restatement 2d. § 187

provides that, where the parties agree to a choice-of-law provision "to govern their

contractual rights and duties," that choice should be enforced. *See also Hionis Int'l*

*Enter., Inc. v. Tandy Corp.*, 867 F. Supp. 268, 271 (D. Del. 1994). In the absence of an

operative choice-of-law provision in a contract, Delaware courts apply the "most

significant relationship test." Restatement 2d. § 188; *Travelers*, 594 A.2d at 47. Further,

where an action lies in quasi-contract, the Restatement 2d. provides that courts proceed

directly to the "most significant relationship test." Restatement 2d. ch. 8, topic 6

introductory n.; Restatement 2d. § 221.

Here, the Letter contains a choice-of-law provision stating that it shall be

"governed by and . . . construed in accordance with the laws of the State of Delaware."

(JA at 38.) Thus, by its express terms, the Letter limits the choice-of-law provision to

claims arising from "[t]his Agreement." (*Id.*) Peskoff pursues quasi-contract claims, not

a pure contract claim arising under the Letter, and, therefore, the Letter's choice of law

provision does not apply to this action.[3] Moreover, given the likelihood that, in a quasi-

_____

[3] In 6 Del. C. § 2708(a), the Delaware General Assembly instructs on Delaware public policy in cases like this: "The parties to any contract, agreement or other undertaking, contingent or otherwise, may agree in writing that the contract, agreement or other undertaking shall be governed by or construed under the laws of this State, without regard to principles of conflicts of laws[.]" Thus, while Delaware policy recognizes that parties may designate a choice-of-law in contexts other than a formal contract, here, the parties' choice-of-law provision expressly only governs disputes arising under the Letter, not the relationship generally. In other words, the outcome may have been different if the Letter read: "Disputes arising from the relationship between the parties to this Agreement

7

contract suit, the Supreme Court of Delaware would proceed directly to "the most significant relationship test," such a course is likewise advisable here. *See* Restatement 2d. § 221. *But see Greetham v. Sogima L-A Manager, LLC*, No. 2084, 2008 WL 4767722, at \*14 (Del. Ch. Nov. 3, 2008) (examining a promissory estoppel claim under a Delaware choice of law clause provided in a contract that it otherwise found unenforceable in a pure contract claim).

Under "the most significant relationship test," courts take into account (a) the place of the alleged contracting or where the relationship was centered; (b) the place of negotiating the alleged contract; (c) the place of the alleged performance; (d) the place of the subject matter; and (e) the place(s) of incorporation and business of the parties. Restatement 2d. §§ 187, 221. Here, New York clearly has the most significant relationship to the case: it is the place of the alleged contracting, alleged performance, and subject matter. While FIDAC is incorporated in Delaware, Delaware has no other relationship to this dispute; for instance, FIDAC's place of business is in New York, while Peskoff's place of business is in Virginia. Evaluating these contacts according to their relative importance, namely, the introductions and meetings giving rise to Peskoff's claims, this Court concludes that New York has the most significant relationship to this dispute. Accordingly, this Court will apply New York law to examine Peskoff's claims.

**B.**

---

shall be governed and construed in accordance with the laws of the State of Delaware."

The Court now turns to the New York Statute of Frauds.[4]  As discussed earlier, the New York Statute of Frauds bars claims seeking a finder's fee where there is no memorandum or writing evidencing such agreement.  N.Y. Gen. Oblig. Law § 5-701(a)(10).  "Thus, according to New York law, a contract to pay a finder's fee must, of course, be in writing and obviously, this requirement may not be avoided by an action for compensation in quantum meruit."  *Tower Int'l, Inc. v. Caledonian Airways, Ltd.*, 969 F. Supp. 135, 139 (E.D.N.Y. 1997) (internal quotation marks omitted); *see also* N.Y. Gen. Oblig. Law § 5-701(a)(10) (prescribing that the Statute of Frauds "shall apply to a contract implied in fact or in law"); *Philo Smith & Co., Inc. v. USLIFE Corp.*, 554 F.2d 34, 35 (2d Cir. 1977) (per curiam) ("Under the applicable New York Statute of Frauds, . . . the absence of an effective written note or memorandum of agreement is generally fatal to an action for a finder's fee, whether based on a theory of express contract, implied in fact contract[,] or quasi contract.").

In order to satisfy the Statute of Frauds, a writing or collection of writings must reflect all material terms of the agreement, *Intercont'l Planning, Ltd. v. Daystrom, Inc.*, 248 N.E.2d 576, 579 (N.Y. 1969), except for the rate of compensation, *Newman v. Crazy Eddie, Inc.*, 501 N.Y.S.2d 398, 398 (N.Y. App. Div. 1986).  Essential terms include

---

[4] FIDAC raised the Statute of Frauds issue before the District Court, but the District Court did not reach this issue.  However, "we may affirm a district court's grant of summary judgment on any ground that appears in the record[.]"  *Hedges v. Musco*, 204 F.3d 109, 116 (3d Cir. 2000).

identification of the buyer and the seller; the fact of the seller's employment for the alleged services; the subject matter of the transaction; and acknowledgment of performance. *Morris Cohon & Co. v. Russell*, 245 N.E.2d 712, 715 (N.Y. 1969); *see also Springwell Corp. v. Falcon Drilling Co.*, 16 F. Supp. 2d 300, 305 (S.D.N.Y. 1998) ("[C]ourts have dismissed quantum meruit claims under the Statute of Frauds . . . where the writings left ambiguity as to whether the agreement's terms covered the transaction upon which a fee was claimed."); *Flammia v. Mite Corp.*, 401 F. Supp. 1121, 1133 (E.D.N.Y. 1975) (holding that writings satisfied Statute of Frauds where they "sufficiently identif[ied] seller, identif[ied] and establish[ed] plaintiff's role in the negotiations, establish[ed] the subject matter of the transaction; and most important, acknowledge[d] performance by and obligation to the plaintiff as a consequence of his assistance").

Here, the Letter relied upon by Peskoff contains few, if any, of the material terms of the agreement regarding Gen Advisors and Sentry that Peskoff asserts. While the Letter identifies Peskoff and FIDAC, conspicuously absent is any mention of Gen Advisers and Sentry, the introductions on which Peskoff's claims are based; nor does the Letter establish the subject matter of the transaction or an acknowledgement of performance. Moreover, New York has a stated policy of protecting the financial industry from thinly-supported finder's fee claims. *See United Res. Recovery Corp. v. Ramko Venture Mgmt., Inc.*, 584 F. Supp. 2d 645, 653 (S.D.N.Y. 2008). "It is this type of

10

situation to which the [Statute of Frauds] is addressed." *Freedman v. Chem. Constr. Corp.*, 372 N.E.2d 12, 15 (N.Y. 1977). Peskoff's claims are barred by New York's Statute of Frauds.

**IV.**

We will, therefore, affirm.