# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ARKRAY AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N20C-12-012 MMJ [CCLD] |
| | ) | |
| NAVIGATOR BUSINESS | ) | |
| SOLUTIONS, INC., AND N'WARE | ) | |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: March 29, 2021
Decided: June 9, 2021

On Defendant N'Ware Technologies, Inc.'s Motion to Dismiss Counts III, V, and
VII of the Complaint
**GRANTED IN PART and DENIED IN PART**

On Defendant Navigator Business Solutions, Inc.'s Motion to Dismiss Counts IV
and VI of the Complaint
**DENIED**

On Defendant Navigator Business Solutions, Inc.'s Motion for a More Definite
Statement
**DENIED**

## <u>OPINION</u>

Jennifer C. Wasson, Esq., Carla M. Jones, Esq., Potter Anderson Corroon LLP,
Wilmington, Delaware, Julia E. Markley, Esq. (Argued), Nathan R. Morales, Esq.,
Perkins Coie LLP, Portland, Oregon, Lindsey Dunn, Esq. (Argued), Perkins Coie
LLP, Denver, Colorado, *Attorneys for Plaintiff ARKRAY America, Inc.*

1

Stephen J. Kraftschik, Esq., Christina B. Vavala, Esq., Polsinelli PC, Wilmington, Delaware, Eric E. Lynch, Esq., Jonathan G. Brinson, Esq. (Argued), Polsinelli PC, Phoenix, Arizona, *Attorneys for Defendant Navigator Business Solutions, Inc.*

Scott B. Czerwonka, Esq., Wilks Law, LLC, Wilmington, Delaware, Mark K. Thompson, Esq. (Argued), MKT Law PLC, Minneapolis, Minnesota, *Attorneys for Defendant N'Ware Technologies, Inc*.

**JOHNSTON, J.**

## FACTUAL AND PROCEDURAL CONTEXT

### *Parties*

This case arises from the performance of a business software system. Plaintiff ARKRAY America, Inc. ("ARKRAY") is a Delaware corporation with its principal place of business in Edina, Minnesota.[1] Defendant Navigator Business Solutions, Inc. ("Navigator") is a Utah corporation with its principal place of business in Pleasant Grove, Utah.[2] Defendant N'Ware Technologies, Inc. ("N'Ware") is a Delaware corporation with its principal place of business in Dover, New Hampshire.[3]

### *ARKRAY's Business Software Needs*

ARKRAY is a major manufacturer and distributor of diabetes testing and management supplies.[4] ARKRAY's business practices are highly regulated by the United States Food and Drug Administration.[5] Additionally, many of ARKRAY's clients impose specific requirements on how orders are filled.[6]

In order to ensure compliance with all manufacturing and distribution requirements—such as documenting the batch and serial numbers of the finished devices in each sale, and tracking which devices are under warranty—ARKRAY

---

[1] Compl. ¶ 6.
[2] *Id.* ¶ 7.
[3] *Id.* ¶ 8.
[4] *Id.* ¶ 13.
[5] *Id.* ¶ 14.
[6] *Id.* ¶ 13.

purchased a fully integrated Enterprise Resource Planning ("ERP") system.[7]

ARKRAY needed an ERP system that would "[p]rovide an advanced Warehouse

Management System (WMS) for inventory receiving, inventory movement, order

management, order replenishment, and hand-held scanners for all inventory

transactions" and "[p]rovide advanced technical customer service functionality to

handle initial telephone calls from customers, field service technician dispatching,

complaint handling, and travel and material invoicing."[8]

### ARKRAY Enters into Agreements with Navigator and N'Ware

Navigator provides software and consulting services to manufacturers and

businesses in various industries.[9]  In early 2015, Navigator and ARKRAY began

discussing an arrangement whereby Navigator would provide ARKRAY with the

necessary ERP system.[10]  On April 27, 2015, Navigator visited ARKRAY's

facilities in Edina, Minnesota.[11]  During this meeting, ARKRAY and Navigator

discussed ARKRAY's operations and software needs.[12]  Navigator told ARKRAY

that it could design and implement an ERP system that would meet ARKRAY's

requirements.[13]

---

[7] *Id.* ¶ 18.
[8] *Id.*
[9] *Id.* ¶ 7.
[10] *Id.* ¶ 19.
[11] *Id.* ¶ 20.
[12] *Id.*
[13] *Id.*

During the discussion stage, Navigator proposed a second meeting at ARKRAY's facilities and suggested that a representative from N'Ware also attend.[14] N'Ware provides custom "add-on" software and consulting services.[15] A Navigator representative told AKRAY that N'Ware was "the expert" and a "'best of breed' partner for warehouse management."[16] Navigator and N'Ware visited ARKRAY's facilities on June 15, 2015.[17] During this meeting, ARKRAY reiterated the specifies of its operations and software needs.[18] Navigator indicated that it understood ARKRAY's requirements and could provide an adequate software system.[19]

On September 25, 2015, Navigator sent ARKRAY an initial proposal document setting forth its recommendation for an SAP BusinessOne ERP system with nine software add-ons.[20] One of the recommended add-ons was a warehouse management program—LISA Distribution ("LISA")—developed by N'Ware.[21] Navigator represented that this configuration of base software and add-ons would meets ARKRAY's needs.[22]

---

[14] *Id.*
[15] *Id.* ¶ 8.
[16] *Id.* ¶ 20.
[17] *Id.* ¶ 22.
[18] *Id.*
[19] *Id.*
[20] *Id.* ¶ 24.
[21] *Id.*
[22] *Id.*

After negotiations and various proposal documents, ARKRAY entered into an agreement with Navigator on February 24, 2016. Navigator agreed to provide software and consulting services (the "Agreement").[23] ARKRAY additionally entered into a license agreement with N'Ware to utilize the LISA program on April 6, 2016 (the "License Agreement").[24]

### *ARKRAY Terminates the Agreement*

Following execution of the Agreement and the License Agreement, Navigator began working on ARKRAY's ERP system.[25] Navigator failed to meet various deadlines as set out in the Agreement.[26] ARKRAY provided extensions to Navigator.[27] However, Navigator still failed to provide and test a successful software system by May 2017.[28]

ARKRAY notified Navigator and N'Ware—orally and in writing—about various issues with the Navigator system as a whole and with the N'Ware LISA add-on.[29] On June 6, 2017, ARKRAY wrote a letter to Navigator, listing flaws in the system. ARKRAY asked Navigator to complete nine tasks within 30 days.[30] The June 6th letter also notified Navigator that ARKRAY viewed the system's

---

[23] *Id.* ¶ 30.
[24] *Id.* ¶ 34.
[25] *Id.* ¶ 38.
[26] *Id.* ¶ 41.
[27] *Id.*
[28] *Id.* ¶ 42.
[29] *Id.* ¶ 45.
[30] *Id.* ¶ 46.

failures as a material breach of the Agreement and gave Navigator 30 days to cure the defects.[31]  Thirty days later, the issues with the system had not been cured.[32]  ARKRAY terminated the Agreement with Navigator on July 21, 2017.[33]

### *Procedural History*

In October 2019, the parties entered into mediation to resolve various disputes stemming from the Agreement and License Agreement.[34]  After mediation was unsuccessful, ARKRAY filed suit in Minnesota on May 27, 2020.[35]  The Minnesota action was dismissed based on *forum non conveniens* grounds, and because ARKRAY failed to properly serve Navigator.[36]

ARKRAY filed suit in this Court on December 1, 2020.  ARKRAY asserts the following claims: (1) breach of contract against Navigator; (2) breach of warranty against Navigator; (3) breach of warranty against N'Ware; (4) fraudulent misrepresentations against Navigator; (5) fraudulent misrepresentations against N'Ware; (6) violation of the Minnesota Unfair Trade Practices Act (UTPA) against Navigator; and (7) violation of the Minnesota UTPA against N'Ware.

Navigator filed a Motion to Dismiss Counts IV and VI of the Complaint on January 13, 2021.  Navigator also filed a Motion for a More Definite Statement on

---

[31] *Id.* ¶ 47.
[32] *Id.* ¶ 48.
[33] *Id.*
[34] Nav. OB at 7.
[35] *Id.*
[36] *Id.*

the same day. N'Ware filed a Motion to Dismiss Counts III, V, and VII on January 29, 2021.

## STANDARD OF REVIEW

### *Failure to State a Claim Upon Which Relief Can be Granted*

In a Rule 12(b)(6) Motion to Dismiss, the Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[37] The Court must accept as true all well-pleaded allegations.[38] Every reasonable factual inference will be drawn in the non-moving party's favor.[39] If the claimant may recover under that standard of review, the Court must deny the Motion to Dismiss.[40]

### *Failure to Provide Sufficient Information*

In a Rule 12(e) Motion for a More Definite Statement, the Court must review the complaint and determine whether it provides sufficient information to the defendant. If the complaint "appear[s] to be so vague or ambiguous as to make it unreasonable to require the defendant to frame a responsive pleading, then a more definite statement will be required to correct its defects."[41]

---

[37] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).
[38] *Id.*
[39] *Wilmington Sav. Fund. Soc., F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super.) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).
[40] *Spence*, 396 A.2d at 968.
[41] *Twin Coach Co. v. Chance Vought Aircraft, Inc.*, 163 A.2d 278, 283 (Del. Super. 1960).

# ANALYSIS

# MOTIONS TO DISMISS

Navigator and N'Ware have filed Motions to Dismiss. Navigator argues that: (1) the Utah choice-of-law provision in the Agreement governs all claims against it; (2) Count IV (fraudulent misrepresentation) is barred by Utah's economic loss doctrine; and (3) Count VI (violation of the Minnesota UTPA) does not present a claim that is cognizable under Utah law.

N'Ware argues that: (1) the Delaware choice-of-law provision contained in the License Agreement governs all claims against it; (2) Count V (fraudulent misrepresentation) must be dismissed because it is not properly pled and is barred by the economic loss doctrine or bootstrapping doctrine; (3) Count VII (violation of the Minnesota UTPA) should not be permitted because it attempts to apply the statute of another state; (4) Count III must be dismissed because ARKRAY failed to comply with certain contractual requirements prior to filing suit; (5) any potential damages are capped at $31,500; and (6) ARKRAY contractually waived its right to a trial by jury.

### *Choice of Law*

The Agreement and the License Agreement include similar choice-of-law provisions. The Navigator Agreement states that "[t]his Base Agreement shall be governed by and construed under the laws of the State of Utah without reference to

9

its conflicts of law principles."[42] The N'Ware License Agreement provides that it "shall be governed by and construed in accordance with the laws of the State of Delaware, United States of America, without reference to its conflicts of laws principles."[43]

It is undisputed that both choice-of-law provisions are valid and apply to contract-based claims. Utah law governs Counts I and II (breach of contract and breach of warranty against Navigator). Delaware law governs Count III (breach of warranty against N'Ware). However, the parties disagree over whether these provisions also apply to the tort and statutory claims. ARKRAY contends that these provisions are narrow. Navigator and N'Ware both urge the Court to apply the provisions broadly to all claims between the parties.

There is divergent precedent in Delaware on this issue. The argument for a broad application is supported by *Abry Partners V., L.P. v. F & W Acquisition LLC*.[44] In that case, the Court of Chancery determined that a choice-of-law provision that stated the agreement would "be governed by, and construed in accordance with, the Laws of the State of Delaware, regardless of the Laws that

---

[42] Nav. OB, Ex. A at 2, § 4.2.
[43] N'Ware OB, Ex. A at 2, § 1.8.
[44] 891 A.2d 1032 (Del. Ch. 2006).

might otherwise govern under applicable principles of conflicts of law" applied to both contract and tort claims.[45] The Court of Chancery reasoned:

> Parties operating in interstate and international commerce seek, by a choice of law provision, certainty as to the rules that govern their relationship. To hold that their choice is only effective as to the determination of contract claims, but not as to tort claims seeking to rescind the contract on grounds of misrepresentation, would create uncertainty of precisely the kind that the parties' choice of law provision sought to avoid. In this regard, it is also notable that the relationship between contract and tort law regarding the avoidance of contracts on grounds of misrepresentation is an exceedingly complex and unwieldy one, even within the law of single jurisdictions. To layer the tort law of one state on the contract law of another state compounds that complexity and makes the outcome of disputes less predictable, the type of eventuality that a sound commercial law should not seek to promote.[46]

The Court finds *Abry* distinguishable. This case does not involve an attempt to void the contracts. ARKRAY has brought parallel breach of contract and fraudulent misrepresentation claims, along with alleged statutory violations.

Other subsequent cases have drawn a distinction between provisions that include language about claims "arising out of" or "relating to" the contract and those that simply govern "the agreement." In *Huffington v. T.C. Group, LLC*,[47] this Court found that a "choice of law provision, without language such as 'arising out of or relates to,' only requires the Court to apply Delaware law to claims

---

[45] *Id.* at 1050.
[46] *Id.* at 1048.
[47] 2012 WL 1415930, at *1 (Del. Super.)

11

challenging the terms and provisions of the [a]greement."[48] Similarly, the Court of Chancery, in *Gloucester Holding Corp. v. U.S. Tape and Sticky Prods., LLC*,[49] found that a provision that "[did] not claim to cover litigation that *arises out of or relates to* the Asset Purchase Agreement" was "not sufficiently broad enough to cover tort claims such as fraud in the inducement."[50]

The United States Court of Appeals for the Third Circuit appears to approve of this broad/narrow distinction based on language. In *Underhill Inv. Corp. v. Fixed Income Advisory Co.*,[51] the Third Circuit analyzed a choice-of-law provision that stated the agreement would be "governed by and ... construed in accordance with the laws of the State of Delaware."[52] Finding that "by its express terms, the agreement limited the choice-of-law provision to claims arising from 'this Agreement,'" the Court determined that the provision did not cover quasi-contract claims.[53] Applying "the most significant relationship test" from the Restatement (Second) of Conflicts, the Third Circuit ultimately determined that New York law applied to the quasi-contract claims in the case.[54]

---

[48] *Id.* at *11.
[49] 832 A.2d 116 (Del. Ch. 2003).
[50] *Id.* at 124 (emphasis in original).
[51] 319 Fed.Appx. 137 (3d Cir. 2009).
[52] *Id.* at 141.
[53] *Id.* (cleaned up).
[54] *Id.*

12

The Court finds that the two choice-of-law provisions at issue in this case are narrow and apply only to the contract-based claims found in the Counts I, II, and III of the Complaint. As to the remaining claims, in order to determine which state's laws apply, the Court must apply a two-part test. First, the Court determines whether there are any conflicts between the laws of the potentially applicable states.[55] Here, those states would be Delaware, Utah, and Minnesota. If there are no conflicts, the analysis ends.[56] If, however, a conflict exists, the Court must engage in a conflict-of-laws analysis to determine which state has the most substantial relationship to the dispute.[57]

With respect to Counts IV and V, there are no conflicts of law related to fraudulent misrepresentation or the economic loss doctrine. Therefore, the Court need not engage in a conflicts of law analysis for those claims. As further discussed in the next section, the Court also need not perform a conflict-of-laws analysis for Counts VI and VII.

### *Minnesota Statutory Claim Against Defendants*

Navigator and N'Ware argue that ARKRAY's Minnesota UTPA claims are not cognizable under Utah or Delaware law. ARKRAY maintains that there is no

---

[55] *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1050 (Del. 2015).
[56] *Id.*
[57] *Id.*

conflict between the laws of Minnesota, Utah, and Delaware because all previously have allowed plaintiffs to pursue claims based on statutes from sister states.

After reviewing the applicable authority, it appears that Utah and Delaware can recognize statutes from a sister state so long as applying the foreign law does not offend public policy.[58]  "Comity permits one state to give effect to the laws of a sister state, not out of obligation, but out of respect and deference."[59]

In the present case, there is nothing that suggests Delaware public policy would be offended by applying the Minnesota UTPA.  The statute at issue prohibits persons from misrepresenting the quality of goods.[60]  Delaware's Deceptive Trade Practices Act and Utah's Deceptive Trade Practices Act contain identical prohibitions against persons "[r]epresent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or

---

[58] *See Galindo v. City of Flagstaff*, 452 P.3d 1185, 1185 (Utah 2019) (stating that principles of comity "create a rebuttable presumption that . . . [Utah] courts enforce our sister states' laws unless they violate Utah public policy"); *Jackson v. Joyner*, 367 P.2d 452, 454 (Utah 1961) ("Since appellant was the president of the Utah corporation and the person who actually transacted the business in Wyoming, there appears to be no good reason or public policy why our courts should not entertain an action against him based on the statutorily created liability of Wyoming."); *Tyson v. Scartine*, 118 A.2d 795, 796 (Del. Super. 1955) ("[T]he law has long been settled that a state will enforce rights arising under the statutes of a sister state provided the statute of the state in which the injury complained of arose does not contravene the statutes or announced public policy of the state in which the action is sought to be enforced.").
[59] *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1218 (Del. 1991) (internal citation omitted). *See also Trillium USA, Inc. v. Board of County Com'rs of Broward County, Florida*, 37 P.3d 1093, 1097-98 (Utah 2001) (discussing principles of comity).
[60] Minn. Stat. Ann. § 325D.13.

model, if they are of another."[61]  Because Delaware, Utah, and Minnesota all penalize the same types of misrepresentations alleged in the Complaint, it cannot be said that applying the Minnesota UTPA would offend public policy.[62] Therefore, no conflict of law exists.  Defendants' requests to dismiss ARKRAY's Minnesota UTPA claims are denied.

### *Fraudulent Misrepresentation Against Defendants*

#### *Particularity*

Rule 9(b) requires that fraud claims be pled with particularity.  The particularity requirement "is met when the defendant is put on notice as to the general nature of the special damage being asserted so that he may proceed to investigate the details of the claim by the discovery processes available to him."[63] A plaintiff is not required to include "all evidence of fraud within the knowledge of the plaintiffs" in the complaint, "but it is essential that the precise theory of fraud with supporting specifics appear in the complaint."[64]

N'Ware argues that ARKRAY failed to plead fraudulent misrepresentation with the requisite particularity.  In the Complaint, ARKRAY alleges that an N'Ware representative visited ARKRAY's facilities on June 15, 2015 and received

---

[61] 6 *Del. C.* § 2532; Utah Code Ann. § 13-11a-3.
[62] The Court notes that ARKRAY's fraudulent misrepresentation claims and UTPA claims are based on the same alleged conduct. Therefore, practically speaking, discovery in this case would be essentially the same whether or not the UTPA claims are dismissed.
[63] *Stitt v. Lyon*, 103 A.2d 332, 333 (Del. Super. 1954).
[64] *Nutt v. A.C. & S., Inc.*, 466 A.2d 18, 23 (Del. Super. 1983).

information about ARKRAY's software needs.[65] The Complaint alleges that Navigator and N'Ware presented a video demonstration about LISA to ARKRAY.[66] The Complaint further alleges that N'Ware represented that LISA would meet ARKRAY's needs.[67] ARKRAY asserts that N'Ware either knew LISA could not meet ARKRAY's needs, or made the representations "without knowledge of the truth of" the statements.[68] Finally, the Complaint alleges that N'Ware made misrepresentations about LISA to induce ARKRAY to enter into the Agreement and the License Agreement, which ARKRAY did to its detriment.[69]

The Court finds that the allegations contained in the Complaint are sufficient to put N'Ware on notice of ARKRAY's claim against it and show ARKRAY's theory of fraud. Therefore, ARKRAY has pled Count V with the requisite particularity.[70]

*Bootstrapping*

Under Delaware law, a plaintiff may not 'bootstrap' a fraud claim to a breach of contract claim.[71] However, this is not to say that a party can *never* bring

---

[65] Compl. ¶ 22.
[66] *Id.* ¶ 26.
[67] *Id.* ¶ 77.
[68] *Id.* ¶ 80.
[69] *Id.* ¶¶ 82-85.
[70] Navigator did not make an argument related to particularity in its Motion to Dismiss. However, if it had, that argument would fail for the same reasons that N'Ware's argument fails.
[71] *See Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *15 (Del. Ch.) (discussing the prohibition against 'bootstrapping').

both a fraud claim and a breach of contract claim. "[A] fraud claim alleged contemporaneously with a breach of contract claim may survive, so long as the claim is based on conduct that is separate and distinct from the conduct constituting breach."[72] Parallel claims are permissible: "(1) where a plaintiff has made particularized allegations that a seller knew contractual representations were false or lied regarding the contractual representation, (2) where damages for plaintiff's fraud claim may be different from plaintiff's breach of contract claim, (3) when the conduct occurs prior to the execution of the contract and thus with the goal of inducing the plaintiff's signature and willingness to close on the transaction, or (4) when the breach of contract claim is not well-pled such that there is no breach claim on which to 'bootstrap' the fraud claim."[73]

N'Ware argues that ARKRAY's fraudulent misrepresentation claim against it is impermissibly bootstrapped to its breach of warranty claim. This argument fails for two reasons. First, the Court finds that ARKRAY's fraudulent misrepresentation claim is based on pre-contractual statements made with the intent to induce ARKRAY to enter into the License Agreement. The alleged actions are separate and distinct from the actions alleged in the breach of warranty

---

[72] *Furnari v. Wallpang, Inc.*, 2014 WL 1678419, at *8 (Del. Super.) (internal quotations omitted).
[73] *Pilot Air Freight, LLC v. Manna Freight Sys., Inc.*, 2020 WL 5588671, at *26 (Del. Ch.) (internal quotations omitted).

17

claim. Second, the Court finds that the damages sought by ARKRAY are not identical. For the breach of warranty claim, ARKRAY's recovery may be capped at the contractually agreed upon amount. For the fraudulent misrepresentation claim, ARKRAY seeks rescissory damages. For these reasons, Delaware's bootstrapping doctrine does not prohibit ARKRAY's breach of contract and fraudulent misrepresentation claims from proceeding on a parallel track.

*Economic Loss Doctrine*

Navigator and N'Ware argue that the respective fraudulent misrepresentation claims against them are barred by the economic loss doctrine. This judicially-created doctrine "prohibits certain claims in tort where overlapping claims based in contact adequately address the injury alleged, because, the theory is, contract law provides a better and more specific remedy than tort law."[74] However, like Delaware's bootstrapping doctrine, the economic loss doctrine does not function as a blanket ban on all parallel tort and contract claims. Courts and legislatures have recognized that pre-contractual fraud can be an exception to the economic loss doctrine.[75] In order to proceed on a parallel track, a plaintiff's tort

---

[74] *Alltrista Plastics, LLC v. Rockline Industries, Inc.*, 2013 WL 5210255, at *4 (Del. Super.).
[75] *See id.*; Minn. Stat. Ann. § 604.10(e) (stating that Minnesota's statutorily codified economic loss doctrine "shall not be interpreted to bar tort causes of action based upon fraud or fraudulent or intentional misrepresentation").

claim must arise from the inducement to enter into the contract and not from the underlying contract itself.[76]

Navigator relies on *HealthBanc International, LLC v. Synergy Worldwide, Inc.*,[77] to argue that Utah never recognizes pre-contractual fraud as an exception to the economic loss doctrine.  The Court notes that while the Supreme Court of Utah found that, under the facts of that case, the plaintiff's fraud claim was barred, it explicitly declined to "foreclose the possibility that in a future case a limited exception for fraud in the inducement may be warranted."[78]  This single case is not enough to create a conflict of laws.

Counts IV, V, VI, and VII of the Complaint all allege pre-contractual fraud that goes to inducement rather than performance.  ARKRAY alleges that Navigator falsely represented, among other things, its ability to design and provide an adequate software system for the purpose of convincing ARKRAY to hire Navigator instead of another company.  ARKRAY alleges that Navigator also misrepresented the quality of the BusinessOne system and LISA add-on for the same purpose.  Finally, ARKRAY alleges that N'Ware misrepresented the quality of its LISA program and the ability to meet ARKRAY's needs to induce ARKRAY to enter into the License Agreement.  This alleged misconduct is

---

[76] *Alltrista*, 2013 WL 5210255, at *5.
[77] 435 P.3d 193, 196 (Utah 2018).
[78] *Id.*

sufficiently distinct from the conduct alleged in the contract-based claims to survive a motion to dismiss.

The Court finds that ARKRAY's fraudulent misrepresentation claims, and Minnesota UTPA claims, are not barred by the economic loss doctrine. These claims may proceed on a parallel track with ARKRAY's contract-based claims. THEREFORE, Navigator's Motion Dismiss is DENIED.

### Breach of Warranty Against N'Ware

N'Ware argues that ARKRAY's breach of warranty claim fails because the Complaint does not allege that ARKRAY complied with certain prerequisites to filing suit set forth in the License Agreement. Therefore, N'Ware contends, ARKRAY has failed to state a claim for Count III.

In paragraph 45 of the Complaint, ARKRAY states that it "notified Navigator and N'Ware multiple times, both orally and in writing, that LISA and the new system configuration did not function." Paragraph 43 states that LISA "evidenced multiple functionality failures" and "instead of providing ARKRAY with a fully functioning warehouse-management program as promised, N'Ware demanded that ARKRAY reconfigure its warehouse." Paragraph 43 additionally states that "LISA could not process the large order sizes required by ARKRAY's national customers." Paragraphs 64, 65, and 66 quote the express warranty at issue—that LISA "shall perform substantially in accordance with the functional

20

specifications contained in its associated documentation" and be free from "defects." These paragraphs state how that warranty was breached and allege that ARKRAY informed N'Ware of the various problems with LISA.

If ARKRAY failed to comply with all notice requirements under the License Agreement, this failure may form the basis of a defense for N'Ware. However, ARKRAY was not required to allege that it complied with all terms of the License Agreement in the Complaint. The Court finds that ARKRAY has stated a claim for breach of warranty.

N'Ware argues in the alternative that if Count III survives the Motion to Dismiss, ARKRAY's potential recovery should be to $31,500 based on the terms of the License Agreement. The Court finds that there is an insufficient basis at this time for an adequate and comprehensive analysis of the limitation of damages issue. Therefore, this issue will not by decided at the motion to dismiss juncture.

### *Waiver of Right to Jury Trial for Claims Against N'Ware*

In the Complaint, ARKRAY demanded a trial by jury. In its motion, N'Ware argues that ARKRAY contractually waived the right to a jury trial. Section 1.8 of the License Agreement states that "[e]ach party waived any right,

and agrees not to apply to have any disputes under this Agreement tried or otherwise determined by a jury, except where required by law."[79]

Under the plain language of this provision, the right to a jury trial on claims arising from post-contractual conduct clearly are waived. Therefore, the Court finds that ARKRAY is not entitled to a trial by jury for its breach of warranty claim in Count III. Counts V and VII, ARKRAY's fraudulent misrepresentation and UTPA claims against N'Ware, involve pre-contractual conduct. ARKRAY may not have waived its right to a jury trial for Counts V and VII. How this will proceed at trial is a practical matter that remains to be seen. THEREFORE, N'Ware's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## MOTION FOR A MORE DEFINITE STATEMENT

Navigator asserts that it is unable to make informed decisions about its potential defenses because ARKRAY has failed to provide sufficient information about its claims. Navigator requests that ARKRAY be required to amend its Complaint and provide:

> (1) the specific Deliverables that were non-conforming to the Agreement; (2) the requirements within any Statement of Work (specified by each Statement of Work and its particular requirements) that were unmet by the Deliverables; (3) in what way the Deliverables did not meet any Statement of Work's requirement; (4) when and how ARKRAY provided written notice to [Navigator] of such

---

[79] N'Ware's OB, Ex. A, at 2 § 1.8.

nonconformance; and (5) specificity with respect to any alleged issues with Concord and FAMe.[80]

The requested information is a proper subject for discovery. The Court finds that it is not necessary to delay discovery to require a more definite statement with the potential for inviting yet another round of dismissal motions. THEREFORE, Navigator's Motion for a More Definite Statement is DENIED.

## **CONCLUSION**

The Court holds that Utah law governs ARKRAY's contract-based claims against Navigator in Counts I and II and Delaware law governs ARKRAY's breach of warranty claim against N'Ware in Count III. There are no conflicts of law related to fraudulent misrepresentation or the economic loss doctrine, so the Court need not engage in a conflict-of-law analysis for Counts IV and V. Additionally, a conflict-of-law analysis is not necessary for Counts VI and VII because Delaware public policy will not be offended by applying the Minnesota UTPA statute.

The Court further finds that ARKAY's claims are not barred by the economic loss doctrine or Delaware's bootstrapping doctrine. ARKRAY's claims are sufficiently pled. The Rule 9(b) particularity requirements are met, and a more definite statement is not necessary. Based on the contractual provisions contained in the N'Ware License agreement, the Court finds that ARKRAY contractually

---

[80] Nav. OB at 13.

23

waived its right to a trial by jury for Count III.  Finally, the Court finds that it would be premature to decide the limitation of damages issue at this time.

**THEREFORE,** Navigator's Motion to Dismiss is hereby **DENIED.** Navigator's Motion for a More Definite Statement is hereby **DENIED.**  N'Ware's Motion to Dismiss is hereby **GRANTED IN PART** with respect to the jury trial waiver and **DENIED IN PART** with respect to the other issues.

**IT IS SO ORDERED.**

_/s/ Mary M. Johnston_
The Honorable Mary M. Johnston