Evelyn M. Tyson, Widow of Thomas G. Tyson, Plaintiff, v. Anthony Scartine, Defendant.

(*November* 22, 1955.)

LAYTON, J., sitting.

*David B. Coxe, Jr.,* for Plaintiff.

*William H. Bennethum* for Defendant.

Superior Court for New Castle County, No. 43, Civil Action, 1954.

LAYTON, J.:

A cause of action arising under the laws of one state, being statutory, will not be enforced by another state as a matter of right but, rather upon principles of comity. Upon this subject, 11 *Am. Jur.*, Conflict of Laws, § 4, p. 296, has this to say:

"No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived. The extent to which the law of one state or nation is allowed to operate within the dominion of another depends on what is commonly called 'the comity of nations.' Comity, in the legal sense, is neither a matter of absolute obligation on the one hand nor of mere courtesy and good will upon the other. It has been defined as the recognition which one nation allows within its territory

to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws. It is also stated to be the doctrine under which contracts made, rights acquired, and obligations incurred in one country, in accordance with its laws, are recognized and enforced by the courts of another country.

\* \* \* \* \* \*

"It is important to note that in the United States each state constitutes a distinct and independent sovereignty, and that consequently, the laws of one state do not operate in any other state *ex proprio vigore*. The intimate union of the states, however, as members of the same great political family leads to a greater degree of comity toward each other than is usual between foreign nations, and the tendency of modern decisions is toward a broader comity in the enforcement of rights created by the legislatures of sister states. A state court, in conformity to state policy, by comity gives a remedy which the full faith and credit clause does not compel."

And the law has long been settled that a state will enforce rights arising under the statutes of a sister state provided the statute of the state in which the injury complained of arose does not contravene the statutes or announced public policy of the state in which the action is sought to be enforced. As stated in 11 *Am. Jur.*, Conflict of Laws, § 6, p. 302:

"A court should not, in otherwise proper cases, refuse to apply the law of a foreign state, however unlike its own, unless it is contrary to pure morals or abstract justice or unless the enforcement would be of evil example and harmful to its own people. \* \* \*."

The rule just stated is in substantial accord with that laid down in *Fidelity Insurance Trust & Safe Deposit Co. v. Niven,* 5 *Houst.* 416, 431, where it was said:

"Generally, force and effect will be given by any State to foreign laws in cases where from the transactions of the parties they are applicable unless they affect injuriously her own citizens, violate her express enactments, or are *contra bonos mores.* * * * *."

In the same connection, the Supreme Court of the State of Virginia in *State of Maryland for Use of Joynes v. Coard*, 175 *Va.* 571, 9 *S. E.* 2d 454, 457, stated:

" 'The true test, therefore, in all such cases would seem to be this: Is the foreign statute contrary to the known policy, or prejudicial to the interest, of the state in which the suit is brought? * * *.' "

Obviously, the conclusions of the courts of the various states upon this proposition have varied in accordance with the strictness or liberality of their views. It is to be noted that Maryland, following the early decision of its Court of Errors and Appeals in *Ash v. Baltimore & O. R. Co.*, 72 *Md.* 144, 19 *A.* 643, until comparatively recently, adopted a rather strict stand with the result that we find the United States Supreme Court in *Stewart v. Baltimore & O. R. Co.*, 168 *U. S.* 445, 18 *S. Ct.* 105, 106, 42 *L. Ed.* 537, stating, "We cannot think that these differences are sufficient to render the statute [Death Act] of Maryland, in substance, inconsistent with the statute or public policy of the District of Columbia; * * *.", while the Court of Appeals of Maryland in *Davis v. Ruzicka*, 170 *Md.* 112, 183 *A.* 569, considering the identical statutes, came to an exactly opposite conclusion. It is significant, however, that fifteen months subsequent to the date of the *Ruzicka* decision, the Maryland Legislature amended its Death Act in part to read as follows:

"2. In any action instituted in the Courts of this State where it shall appear that the death of a person has been caused by the wrongful act, neglect or default of a vessel or of another person, firm or corporation, and such wrongful act, neglect, or default shall have occurred outside of the State of Maryland, whether in another State, the District of Columbia or territory of the

United States, the Courts of this State shall apply the law of such other State, District of Columbia or territory of the United States, to the facts of the particular case, as though such foreign law were the law of this State, provided, however, that the rules of pleading and procedure effective in the Court of this State in which the action is pending govern and be so applied as to give effect to the rights and obligations created by and existing under the laws of the foreign jurisdiction in which the wrongful act, neglect or default occurred; provided, however, that nothing in this section shall apply to causes of action arising prior to June 1, 1937." *Flack Annotated Code of Md.*, Art. 67.

In effect, then, Maryland by legislative action has seemingly brought its policy into line with the rule announced by the *Restatement of the Law, Conflict of Laws* § 392:

"Suit on Foreign Right of Action.

"Action for the death of a person will be allowed in any state on a right of action created by the law of the place of wrong, if the right of action is given to compensate a person or persons injured by the death for the loss caused thereby."

Defendant insists that the Maryland Death Act differs from that of this State in two substantial respects. One is that in Maryland the suit must be maintained in the name of the State of Maryland for the use of the widow, parent or child of the deceased and, there, the jury apportions the damages occasioned to each such beneficiary while, in Delaware, the suit is maintained by the widow for her own benefit. 10 *Del. C.* § 3704(b). Secondly, he points out that the Maryland Statute designates the beneficiaries of any recovery to be the widow, parent or child of the deceased whereas, here, the sole beneficiary seems to be the widow.[1]

---

[1]The Delaware Act also provides if there be no widow, then the action may be brought in the name of the personal representative of the deceased. We are not here faced with the various ramifications which might flow from a suit brought under that latter phase of the Statute. Under the more modern decisions, the same result as here reached would be indicated but I am not required to decide the point.

In the first instance, the difference is a matter of procedure. In the second instance, the variation may be said to be a matter of substance. However, I do not feel that the Maryland Statute contravenes the Delaware Statute and certainly it violates no public policy of this State. Accordingly, I have no hesitation in holding that the dissimilarities between the two acts are not so marked as to prohibit the enforcement of rights granted under the Maryland Death Act in this jurisdiction upon the principles of comity.

Motion denied.