**COLUMBIA CASUALTY COMPANY, an Illinois corporation, Defendant Below, Appellant,**

**v.**

**PLAYTEX FP, INC., formerly known as Playtex Family Products, Inc., a Delaware corporation, Playtex Services Corp., a Delaware corporation, Playtex Family Products Corporation, a Delaware corporation, Playtex FP Group Incorporated, a Delaware corporation, Playtex, Inc., a dissolved Delaware corporation, International Playtex, Inc., a dissolved Delaware corporation, Plaintiffs Below, Appellees.**

Supreme Court of Delaware.

Submitted: Nov. 27, 1990.

Decided: Jan. 8, 1991.

---

Irving Morris (argued), Kevin Gross and Robert S. Bria, Morris, Rosenthal, Monhait & Gross, P.A., Wilmington (Ross, Dixon & Masback, Washington, D.C., of counsel), for appellant.

Walter L. Pepperman, II (argued), and James Lawless, IV, Morris, Nichols, Arsht & Tunnell, Wilmington (William J. McSherry, Jr. (argued), and Steven R. Haffner, Bryan, Cave, McPheeters & McRoberts, New York City, of counsel), for appellees.

Before CHRISTIE, C.J., WALSH and HOLLAND, JJ.

WALSH, Justice:

We have accepted for interlocutory review a decision of the Superior Court which rejected a claim of collateral estoppel asserted by the appellant, Columbia Casualty Company ("Columbia"), against its former insured, Playtex FP, Inc. ("Playtex"). The Superior Court ruled that Playtex was not precluded from relitigating the issue of Playtex's knowledge regarding the risk of toxic shock syndrome associated with the use of its super-absorbent tampons. Such knowledge was attributed to Playtex as a result of certain jury findings in a federal diversity action in Kansas. We agree with the Superior Court that the rendering jurisdiction's requirement of mutuality of collateral estoppel must be given the same preclusive effect in Delaware, and accordingly affirm.

I

The facts giving rise to this dispute are essentially uncontroverted. On April 2, 1983, Betty O'Gilvie died of toxic shock

syndrome.[1] Kelly O'Gilvie, her husband, brought a products liability action, based on diversity of citizenship, in the United States District Court for the District of Kansas alleging that his wife contracted toxic shock syndrome from her use of Playtex's super-absorbent tampons. *O'Gilvie v. International Playtex, Inc.*, D.Kan., 609 F.Supp. 817 (1985), *aff'd in part rev'd in part, O'Gilvie v. International Playtex, Inc.*, 10th Cir., 821 F.2d 1438 (1987), *cert. denied sub nom., Playtex Holdings, Inc. v. O'Gilvie*, 486 U.S. 1032, 108 S.Ct. 2014, 100 L.Ed.2d 601 (1988). The jury found for Mr. O'Gilvie and awarded $1,525,000 in compensatory damages and $10 million in punitive damages. In answering a series of special interrogatories, the jury determined that Playtex knew or should have known of the risks associated with the use of its super-absorbent tampons at the time of Mrs. O'Gilvie's death.[2]

The trial court granted a partial remittitur of punitive damages on the condition that Playtex remove its super-absorbent tampons from the market. The Court of Appeals, however, ruled that the District Court lacked authority to order a conditional remittitur and reinstated the original judgment. Playtex then appealed to the United States Supreme Court which denied certiorari.

In April, 1989, Playtex filed its Superior Court action against Columbia, seeking reimbursement for payments made by Playtex in response to toxic shock syndrome claims.[3] Playtex also alleged bad faith on the part of Columbia in denying coverage. Columbia counterclaimed for rescission of the insurance policy alleging that Playtex had fraudulently misrepresented the risk posed by tampons when it obtained insurance in 1984.

Relying on special interrogatory eight in the *O'Gilvie* action, Columbia moved to bar relitigation of the issue of Playtex's knowledge of the risk of toxic shock syndrome from its super-absorbent tampons, based upon the doctrine of collateral estoppel. The Superior Court denied this motion. We accepted Columbia's motion for interlocutory appeal to resolve this issue.

II

The doctrine of collateral estoppel is designed to provide repose and put a definite end to litigation.[4] *See Tyndall v. Tyndall*, Del.Supr., 238 A.2d 343, 346 (1968). "Under ... [this] doctrine, where a question of fact essential to the judgment is litigated and determined by a valid and final judgment, the determination is conclusive between the same parties in a subsequent case on a different cause of action. In such situation, a party is estopped from relitigating the issue again in the subsequent case." *Id.* Thus, the doctrine of collateral estoppel provides repose by preventing the relitigation of an issue previously decided. In addition, by putting an end to litigation, it conserves judicial resources.

Originally, many courts required mutuality to assert collateral estoppel. Mutuality requires a party attempting to bar an adversary from relitigating an issue to have been a party in the prior litigation or in privity with a party in the prior litigation. *See Bernhard v. Bank of America*

---

1. "Toxic shock syndrome is a rare but serious and sometimes fatal disease associated with tampon use." 21 C.F.R. § 801.430.

2. Special interrogatory number eight, upon which Columbia bases its collateral estoppel claim, states:

 8. Did International Playtex know, or should it have known, of the increased risk of developing toxic shock syndrome when using Playtex super deodorant tampons at the time of the death of Betty O'Gilvie?

 Yes <u>X</u> No ___

3. In 1984, Esmark, Inc., then the parent of Playtex, obtained umbrella liability coverage from Columbia for the policy year from October 1, 1984 to October 1, 1985. This policy expressly covered losses resulting from claims for injuries from toxic shock syndrome caused by Playtex tampons.

4. The doctrine of collateral estoppel is related to the doctrine of res judicata. Collateral estoppel bars a party from relitigating a factual issue previously litigated, while res judicata bars a suit involving the same parties based on the same cause of action. *See Foltz v. Pullman, Inc.*, Del.Supr., 319 A.2d 38, 40 (1974).

*Nat. Trust & Savings Ass'n,* 19 Cal.2d 807, 122 P.2d 892, 894 (1942). "Under the requirement of privity, only parties to the former judgment or their privies may take advantage of or be barred by it.... A privy is one who, after the rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties...." *Id.* Because it restricts standing, the mutuality requirement limits the situations in which collateral estoppel can be asserted. *See Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).

Delaware, like many other jurisdictions, has abandoned the requirement of mutuality as a prerequisite to the assertion of collateral estoppel. "[T]he modern trend of decision and the rule in [Delaware], expands the use of the doctrine to situations where mutuality does not exist." *Chrysler Corp. v. New Castle County,* Del. Super., 464 A.2d 75, 79 (1983). As the California Supreme Court has observed:

> No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend. Many courts have abandoned the requirement of mutuality and confined the requirement of privity to the party against whom the plea of res judicata is asserted.

*Bernhard,* 122 P.2d at 895. Thus, many jurisdictions no longer require that a litigant have been a party in the prior litigation or in privity with a party in the prior litigation in order to assert collateral estoppel. It is sufficient that the party against whom collateral estoppel is asserted was a previous party.

■ The issue before us today, however, does not concern the effect of a prior Delaware judgment but involves the collateral estoppel effect to be given a judgment rendered by a federal district court in Kansas whose jurisdiction was based on diversity of citizenship. The question thus posed is essentially a choice of laws determination.

It is settled law in this jurisdiction that "the doctrines of res judicata and collateral estoppel require that the same effect be given a [foreign] judgment rendered upon adequate jurisdiction as [the foreign court] itself would accord such a judgment." *Bata v. Hill,* Del.Ch., 139 A.2d 159, 165 (1958), *modified sub nom., Bata v. Bata,* Del.Supr., 163 A.2d 493 (1960), *cert. denied,* 366 U.S. 964, 81 S.Ct. 1926, 6 L.Ed.2d 1255 (1961). *Bata* involved the collateral estoppel effect to be accorded a Dutch decision in a Delaware court. The Chancellor in *Bata,* applying principles of comity, determined that a judgment of a foreign court should be accorded the same preclusive effect that it would receive in the rendering jurisdiction. 139 A.2d at 174. On appeal, this Court noted with approval "the established rule" that the preclusive effect of a foreign judgment is measured by standards of the rendering forum. *Bata v. Bata,* 163 A.2d at 504.

The principle enunciated in *Bata* controls the issue before us today. We find no distinction in the fact that *Bata's* holding was directed to a judgment rendered by a court in another country as contrasted with a judgment rendered through the application of state law in a federal forum. Although founded on comity, the *Bata* principle is now one of sound judicial policy and requires that a Delaware court must give the judgments of another state court the same preclusive effect as would a court in that state.

Kansas requires mutuality of estoppel. *See McDermott v. Kansas Public Service Co.,* 238 Kan. 462, 712 P.2d 1199 (1986). Columbia was not a party in *O'Gilvie* nor was it in privity with a party. Under Kansas law, Columbia could not prevent Playtex from relitigating the issue of its knowledge of the risk posed by super-absorbent tampons at the time Playtex obtained insurance from Columbia. In a Delaware court, the same result must follow.

Columbia contends that the Superior Court erred in denying its motion for collateral estoppel for lack of mutuality because Delaware has abandoned the mutuality requirement. It is argued that the decision

of the Superior Court contravenes the internal policy of Delaware with regard to collateral estoppel. We find no merit in this argument.

While it is true that Delaware's abandonment of the mutuality requirement was prompted by the desire to conserve judicial resources and promote finality, *see Coca–Cola Co. v. Pepsi–Cola Co.*, Del.Super., 172 A. 260, 262–63 (1934), a far more compelling conflict of law policy, based on the principle of comity, precludes acceptance of collateral estoppel in this case.

Comity permits one state to give effect to the laws of a sister state, not out of obligation, but out of respect and deference. 16 Am.Jur.2d, *Conflict of Laws* § 10, at 28 (1979). Thus, "[a] cause of action arising under the laws of one state ... will not be enforced by another state as a matter of right but, rather upon principles of comity." *Tyson v. Scartine*, Del. Super., 118 A.2d 795, 795–96 (1955). Recognition of Kansas' mutuality requirement is based on our respect and deference to the laws of Kansas.

Although the parties have debated the effect on this case of the full faith and credit clause, we view the issue as not dispositive.[5] U.S. Const., Art. IV § 1. "This provision requires every state to give to the judgments of another state, assuming jurisdiction by the state entering the judgment over the parties and subject matter, the same effect which that judgment has in the state in which it was rendered." *Epstein v. Chatham Park, Inc.*, Del. Super., 153 A.2d 180, 186 (1959). Since a state court "judicial proceeding" is not directly implicated in the dispute over the preclusive effect of the jury's findings in *O'Gilvie*, the full faith and credit clause does not bind a Delaware court to a foreign result.

To the extent, however, that the mutuality requirement may be viewed as having its origin in Kansas decisional law, the in-

terpretation of the full faith and credit clause advanced by Columbia would result in Delaware giving the judgments of a sister state greater preclusive effect than they would have in the rendering jurisdiction. For example, if Columbia attempted to bar relitigation of the issue of Playtex's knowledge in a Kansas court, that effort would be rejected for lack of mutuality. If, on the other hand, mutuality were not required in the Superior Court action, the Kansas-based judgment would be given greater preclusive effect than received in the rendering jurisdiction. This result is clearly at variance with the purpose and spirit of the full faith and credit clause. Moreover, the resulting varying interpretations would again encourage forum shopping.

### III

■ Finally, Columbia argues that a Delaware court should preclude relitigation of the jury finding in *O'Gilvie* because the Kansas federal district court that decided *O'Gilvie* would have applied federal law which does not require mutuality. We disagree and conclude that the law of the Tenth Circuit supports the application of state law.

Our reading of the law of the Tenth Circuit suggests that a federal district court sitting in diversity is required to apply state law in determining the preclusive effect of a prior judgment. *See Federal Insurance Co. v. Gates Learjet Corp.*, 10th Cir., 823 F.2d 383 (1987); *see also Hayles v. Randall Motor Co.*, 10th Cir., 455 F.2d 169 (1972). In *Gates*, a jet manufactured by the Gates Learjet Corporation crashed destroying the aircraft and killing all five passengers on board. Federal insured the jet for physical damage. After paying the owner's estate, Federal filed a subrogation action in federal district court in Kansas against Gates. Two wrongful death actions were also filed against Gates on behalf of the occupants of the jet—one in a

---

**5.** The full faith and credit clause of the United States Constitution provides:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect Thereof.

federal district court in Georgia, the other in state court in Michigan. The juries in both actions returned verdicts for the respective plaintiffs. Following these verdicts, Federal filed a motion for partial summary judgment on the issue of liability based on the doctrine of collateral estoppel. The District Court granted this motion and the Tenth Circuit reversed.

The Tenth Circuit determined that the District Court erred in failing to apply Michigan law to determine the collateral estoppel effect of the Michigan state court judgment. *Gates*, 823 F.2d at 385. Michigan law requires mutuality for the offensive assertion of collateral estoppel. Federal was not a party in the prior action, nor was it in privity with a party in the prior action. *Id.* Thus, Federal could not use collateral estoppel based on the Michigan litigation to bar Gates from litigating the liability issue. *Id.*

The court then examined the preclusive effect to be given the determination of the Georgia district court. Relying on *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the court determined that "substantive rights should not vary depending on whether a cause of action is brought in state or federal court." *Gates*, 823 F.2d at 386. The court then observed that "[g]iving federal district court judgments greater preclusive effect that state court judgments might cause forum-shopping, a concern of the Court in *Erie*." *Id.* The court in *Gates* concluded that Georgia law should be used to determine the collateral estoppel effect of the determination of the Georgia district court. *Id.* Since Georgia required mutuality and Federal was not a party or in privity with a party, it could not assert collateral estoppel.

Thus, Tenth Circuit precedent compels the application of state law when a federal court sitting in diversity is called upon to determine the preclusive effect to give a prior judgment. *Gates*, 823 F.2d at 386. As did the court in *Gates*, we view the preclusive effect to be given prior judgments as an area of substantive law.

Columbia argues that *Gates'* implicit recognition of state-based mutuality requirement was subsequently eroded by a later decision of the Tenth Circuit in *Petromanagement Corp. v. Acme–Thomas Joint Venture*, 10th Cir., 835 F.2d 1329 (1988). We find *Petromanagement*, however, to be clearly distinguishable since it involves not issue preclusion but claim preclusion arising out of successive diversity actions in the same federal court. Viewing the matter as purely procedural arising out of an effort to consolidate actions under the Federal Rules of Civil Procedure, the appeals court ruled that no state law, *i.e.* substantive, issue was involved. The court expressly noted that "our decision in this case is not inconsistent with *Federal Insurance Co. [Gates]* or *Hayles*." *Petromanagement*, 835 F.2d at 1334.

## IV

As an alternative argument, Playtex maintains that even if there is no legal bar to use of the jury finding in *O'Gilvie*, nonetheless, in the exercise of discretion the Superior Court should not permit the offensive use of such finding on considerations of fairness. The Superior Court found it unnecessary to address this issue, as do we. Moreover, we would decline to consider an issue not specifically decided by the trial court. Supr.Ct.R. 8.

In conclusion, we find Columbia cannot bar Playtex from relitigating the issue of its knowledge of the risk posed by tampons based on the doctrine of collateral estoppel because Columbia was not a party in the prior action nor in privity with a party and mutuality is required. *Compare Bradley v. Division of Child Support Enforcement*, Del.Supr., 582 A.2d 478 (1990). Accordingly, we affirm the decision of the Superior Court.