**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| PATRICK J. CONNELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2021-0119-BWD |
| | ) | |
| CHRISTINA KLEBART, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>FINAL REPORT</u>

Final Report: January 31, 2024
Draft Report: January 16, 2024
Date Submitted: January 2, 2024

Patrick J. Connell, Pueblo, Colorado; *Petitioner*.

Christina Klebart, Camden, Delaware; *Respondent*.

**DAVID, M.**

This is an action to partition real property in Dover, Delaware. After some bumps in the road, the property was sold at public auction in March 2023. I am now tasked with dividing the proceeds from that sale. My final report on distribution follows.[1]

## I.   BACKGROUND[2]

### A.   The Parties and the Property

This action concerns a residence located at 2048 Generals Way in Dover, Delaware (the "Property").[3] Petitioner Patrick J. Connell ("Petitioner") and respondent Christina Klebart ("Respondent") inherited the Property from their father, Patrick Francis Connell ("Decedent"), under his Last Will and Testament (the "Will").[4]

---

[1] On January 16, 2024, I issued a draft report addressing distribution of the partition proceeds (the "January 16 Draft Report"). The parties did not file exceptions to the January 16 Draft Report. Accordingly, this final report is substantively identical to the January 16 Draft Report.

[2] The facts set forth in this final report reflect my findings based on the record developed at a one-day evidentiary hearing on January 2, 2024. The hearing transcript is cited as "Tr. at __". I take judicial notice of filings in a related matter before the Kent County Register of Wills captioned *In re Est. of Patrick Francis Connell*, Case No. 16289. *See Arot v. Lardani*, 2018 WL 5430297, at *1 n.6 (Del. Ch. Oct. 29, 2018) ("Because the Register of Wills is a Clerk of the Court of Chancery, filings with the Register of Wills are subject to judicial notice." (citations omitted)). The docket in that action is cited as "ROW Dkt. __".

[3] Dkt. 1, Ex. 1 at 1.

[4] ROW Dkt. 2 at 2.

1

Respondent and her son moved into the Property with Decedent in 2015.[5] Decedent passed away on March 25, 2018, leaving the Property to Petitioner and Respondent.[6] Shortly after Decedent's passing, Petitioner contacted Respondent and asked to stay at the Property, but Respondent refused, insisting that Petitioner stay at a hotel instead.[7] When Petitioner returned to Dover for Decedent's burial, he requested a key to the Property, but Respondent would not provide one.[8] Petitioner then visited the Property, but Respondent demanded that he leave and called the police.[9] Respondent then changed the locks on the Property.[10]

### B.     The Estate Exceptions

On April 11, 2018, the Will was admitted to probate and Respondent was appointed Personal Representative of Decedent's estate (the "Estate").[11]

On April 9, 2019, Respondent filed a First and Final Accounting in her capacity as Personal Representative of the Estate, docketed in Kent County Register

---

[5] Tr. at 13:18-21.

[6] ROW Dkt. 1.

[7] Tr. at 5:9-15.

[8] *Id*. at 5:22-23.

[9] *Id*. at 17:17-18:11.

[10] *Id*. at 6:16, 42:3-7.  At the hearing, Respondent admitted she did not permit Petitioner to visit the Property because she did not trust him.  *Id*. at 14:17-18.

[11] ROW Dkt. 2.

2

of Wills Case No. 16289 (the "ROW Action").[12]  On March 17, 2019, Petitioner filed exceptions to the First and Final Accounting, contesting Respondent's claims for reimbursement of administrative costs (including costs associated with a locksmith, utilities at the Property after Decedent's passing, a DMV title transfer, and Xfinity bills) and expenses (including E-ZPass and funeral expenses), and Respondent's inventory and accounting of other Estate property (including a 2015 Nissan Altima, an antique lamp, tools, a riding mower, jewelry, a gun, and a dog).[13] Petitioner also sought an order requiring Respondent to pay rent for living at the Property after Decedent's death.[14]

Petitioner's exceptions in the ROW Action were assigned to Magistrate Griffin.  On November 19, 2019, after an evidentiary hearing, Magistrate Griffin issued an Order (the "November 19, 2019 Order") resolving the exceptions as follows:

- "The exceptions concerning estate administrative expenses for A1 Locksmith Company ($68.50) and DMV title Transfer ($40.00) are approved, and [Respondent] . . . must reimburse the Estate for those expenses."[15]

---

[12] ROW Dkt. 6.

[13] ROW Dkt. 12 at 1-3.

[14] *Id*. at 1.

[15] ROW Dkt. 20 ¶ 1.

3

- "[Respondent] is ordered to pay the Estate $11,096.00, for the full value of the car."[16]

- "[Respondent] shall reimburse the Estate the cost of the gun, or $318.00."[17]

- "The exception requesting that [Respondent] pay rent for living in the Decedent's . . . property since the Decedent's death was denied, with the Court noting that as co-owners of the Decedent's real property, [the property] passes to them as beneficiaries under the residuary clause of the Decedent's Will[.] [Respondent] and/or [Petitioner] may address the issue, or other payments towards or benefits received from the property, if a partition action is pursued."[18]

On December 3, 2019, Chancellor Bouchard entered an order adopting the November 19, 2019 Order.[19]

### C.     The First Sale

On February 9, 2021, Petitioner initiated this action through the filing of a Petition for [Partition] and Related Relief.[20]

At a June 15, 2021 hearing before Magistrate Griffin, Respondent failed to show cause why the Court should not order partition of the Property.[21]  The same day, Magistrate Griffin entered an Order for Appointment of Trustee and for Partition Sale of Real Property by Trustee, appointing Dennis L. Schrader, Esquire

---

[16] *Id.* ¶ 4.

[17] *Id.* ¶ 6.

[18] *Id.* ¶ 3.

[19] ROW Dkt. 21.

[20] Dkt. 1.

[21] Dkt. 9.

of Morris James LLP (the "First Trustee") as trustee to sell the Property at public vendue to the highest bidder in accordance with Court of Chancery Rule 183(c), with the sale subject to confirmation by the Court.[22]

On March 14, 2022, the First Trustee filed a Return of Sale, reporting that on October 15, 2021, the Property was sold at public auction to Respondent and her husband for $70,000 (the "First Sale").[23] Respondent executed a Contract of Sale with the First Trustee (the "Contract") and paid a $5,000 deposit, but could not pay the balance due under the Contract.[24] The First Trustee's Return of Sale further explained that Respondent had failed to cooperate with the sale of the Property by denying the First Trustee and potential purchasers the opportunity to view or inspect the Property, removing the sale sign posted on the Property, and disrupting the auction sale by telling prospective purchasers that there were deficiencies in the Property's condition.[25]

On May 25, 2022, Magistrate Griffin held a hearing to address the First Trustee's Return of Sale.[26] Following that hearing, Magistrate Griffin entered an Order (the "May 25, 2022 Order"), finding that "[b]efore and during the Auction,

---

[22] Dkt. 8.

[23] Dkt. 18.

[24] *Id.* ¶¶ 7-11.

[25] *Id.* ¶ 14(a)-(c).

[26] Dkt. 24.

the actions of [Respondent] and her husband affected the [First] [S]ale negatively"; "[Respondent] or her husband removed the auction sign on the Property and refused to allow potential bidders to view the Property"; and "[d]uring the Auction, [Respondent]'s husband created a negative atmosphere among the potential bidders by yelling at prospective purchasers, using profanity and making negative comments about the Property."[27]  The May 25, 2022 Order "declared [Respondent] in default of the Contract"; permitted the First Trustee to retain Respondent's $5,000 deposit to pay expenses from the First Sale, with the payment to be "credited toward the amount paid by Petitioner Patrick Connell"; and provided that "[t]he remaining $4,021.00 in partition sale expenses incurred by the [First] Trustee is entered as a judgment against the Property . . . ."[28]  The May 25, 2022 Order also discharged the First Trustee upon the appointment of a successor trustee, ordered a second partition sale by public auction, and ordered Respondent, her husband, and any guests to vacate the Property within sixty days.[29]

Respondent filed exceptions to the May 25, 2022 Order, which Vice Chancellor Zurn denied on July 19, 2022.[30]

---

[27] Dkt. 22 ¶ C.

[28] *Id*. ¶¶ 1-3.

[29] *Id*. ¶¶ 4-7.

[30] Dkt. 30.

6

### D.    The Second Sale

On October 25, 2022, Magistrate Griffin entered an Order for Appointment of Trustees and for Partition Sale of Real Property by Trustees, appointing David N. Rutt, Esquire and Ryan T. Adams, Esquire of Moore & Rutt P.A. (the "Second Trustees") as trustees to sell the Property at public vendue to the highest bidder in accordance with Court of Chancery Rule 183(c), with the sale subject to confirmation by the Court.[31]

This action was reassigned to me on January 10, 2023.[32]  On April 24, 2023, the Second Trustees filed a Return of Sale, reporting that on March 11, 2023, the Property was sold at public auction to a third party for $115,000 (the "Second Sale").[33]  On May 10, 2023, I entered an Order approving the Second Trustees' Return of Sale, ordering the disbursement of $7,186.65 for reimbursement of fees and expenses incurred in connection with the Second Sale and directing the parties to submit a proposed decree of distribution.[34]

The parties, each appearing *pro se*, did not submit proposed decrees of distribution, but on June 7, 2023, Petitioner filed a submission raising arguments

---

[31] Dkt. 35.

[32] Dkt. 36.

[33] Dkt. 37 ¶ 10.

[34] Dkt. 39 ¶ 4(a)-(b).

concerning distribution of the proceeds.[35]  Respondent opposed Petitioner's position on distribution at a December 8, 2023 status conference.[36]  On January 2, 2024, I held an evidentiary hearing by Zoom to address the distribution of proceeds from the Second Sale.[37]

## II.    ANALYSIS

"The last stage of a partition proceeding involves the distribution of proceeds from the sale of the partitioned property." *In re Real Est. of Hunsucker*, 2019 WL 1984242, at *1 (Del. Ch. May 3, 2019).  After $7,186.65 in expenses is subtracted from $102,523.14 in sale proceeds, $95,336.49 remains for distribution.  Under the Will, Petitioner and Respondent inherited equal interests in the Property, so allocation of the remaining sale proceeds begins with each party receiving fifty percent of the proceeds ($47,668.24 each).  Petitioner and Respondent each seek adjustments to that allocation.  The party seeking the adjustment bears the burden of proof.  *Id.* at *2.

First, Petitioner asks the Court to reduce Respondent's share of the proceeds by $11,522.50, the amount Respondent was directed to reimburse the Estate under

---

[35] Dkt. 40.

[36] Dkt. 45.

[37] Dkt. 48.

the November 19, 2019 Order in the ROW Action.[38] "The accounting in a partition action is confined to matters relating to the common land . . . ." *Est. of Davis*, 2023 WL 4482223, at *3 (Del. Ch. July 11, 2023) (citation and internal quotation marks omitted); *see also In re Smith's Est.*, 93 A.2d 314, 315 (Orphans' Ct. 1952) ("[W]hen the subject matter of the controversy does not arise out of the property partitioned, [the] Court should refuse to assume jurisdiction."). "Issues related to the [d]ecedent's estate, including the distribution of estate funds, are not properly addressed through [a] partition action." *Hunsucker*, 2019 WL 1984242, *2 n.9. I therefore decline to enforce the November 19, 2019 Order in the ROW Action by adjusting distributions in this partition action.

Second, Petitioner asserts that Respondent should be responsible for paying all expenses incurred in connection with the sale of the Property.[39] Magistrate

---

[38] Dkt. 40 at 1-2. At the hearing, the parties introduced evidence concerning issues that were resolved in the November 19, 2019 Order. *See, e.g.*, Tr. at 8:16-11:5; *id*. at 16:17-21; *id*. at 22:1-23:10; *id*. at 49:9-17. The Court is bound by Magistrate Griffin's findings in that order. *See Thomas & Agnes Carvel Found. v. Carvel*, 2008 WL 4482703, at *15 (Del. Ch. Sept. 30, 2008) ("'[W]here a question of fact essential to the judgment is litigated and determined by a valid and final judgment, the determination is conclusive between the same parties in a subsequent case on a different cause of action.'" (quoting *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1216 (Del.1991))), *aff'd*, 970 A.2d 256 (Del. 2009).

[39] Petitioner's June 7, 2023 submission seeks an adjustment for "all expenses" incurred in connection with the sale of the Property. *See* Dkt. 40 at 1 ("The petitioner is requesting that Christina Klebart . . . be ORDERED to pay all expenses that are acquired during the sale of Patrick Francis Connell's REAL ESTATE . . . ."); *id*. ("The petitioner request[s] that the Respondent is ORDERED to pay all fee[s] that were acquired to sell the REAL ESTATE, and any other fees that were acquired for all sales of the REAL ESTATE . . . ."). Testimony at the hearing, however, focused solely on Respondent's conduct during the First Sale. *See, e.g.*, Tr. at 7:17-24 ("Mr. and Mrs. Klebart should be responsible for . . .

9

Griffin's May 25, 2022 Order addressed the payment of expenses from the First Sale, directing that Respondent's $5,000 deposit would be "credited toward the amount paid by Petitioner," with "[t]he remaining $4,021.00 in partition sale expenses . . . entered as a judgment against the Property."[40] Respondent filed exceptions to the May 25, 2022 Order, which were denied on July 29, 2022. Accordingly, the final distribution must be adjusted as directed in the May 25, 2022 Order.

Third, Petitioner contends that Respondent owes him rent for the period during which she had exclusive possession of the Property. Generally, "[a] co-tenant living on property has no obligation to pay rent unless the co-tenants agreed that rent would be paid." *Hunsucker*, 2019 WL 1984242, at *3. "However, if a co-tenant ousts another co-tenant, then rental value for the benefit received by the co-tenant in exclusive possession may be set off against payments made by the co-tenant in exclusive possession." *Id*.

Based on the evidence presented at the hearing, I find that Respondent ousted Petitioner and had exclusive possession of the Property for fifty months, from March

---

and ordered to pay $4,021 from their pockets and not from the estate due to the fact that the Klebarts disrupted the sale to the point that no one else would bid on the property according to Mr. Schrader's testimony during the return of sale on May 25, 2022."); *id*. at 10:18-11:5 ("I don't want the $4,021 included in what comes out of the estate or what's distributed from the estate. Because she messed that sale up."). There is no basis in the record to shift expenses incurred in the Second Sale onto Respondent.

[40] Dkt. 22 ¶¶ 1-3.

25, 2018, when Decedent died, through May 25, 2022, when Respondent was ordered to vacate the Property. During that period, Petitioner asked to stay at the Property but Respondent refused; Petitioner requested a key but Respondent would not provide one; and when Petitioner attempted to access the Property, Respondent demanded that he leave, called the police, and changed the locks on the Property.[41] Because Respondent ousted Petitioner from the Property for fifty months, Petitioner is entitled to one half of the rental value for that period. *Hunsucker*, 2019 WL 1984242, at *3.

The record on rental value is thin. Petitioner testified that he and another sibling "called around rental agencies" and, based on their investigation, determined "that rental property in that area at the time" could be rented for $1,200 per month.[42] "Although it would have been preferable to have more evidence concerning comparable rental values in the area during the relevant time period, I find it reasonable, under the circumstances, to use the lay testimony provided as the basis for rental value in this case." *Id.* at *4 ("In an ordinary case, the owner of a leasehold should be permitted to testify as to the value of his leasehold."). Petitioner's fifty percent share of the rental value during the fifty-month period amounts to $30,000.

---

[41] Tr. at 5:9-6:16, 17:17-18:11.

[42] Tr. at 9:13-15.

Petitioner's share of the proceeds should be increased, and Respondent's share of the proceeds should be decreased, by that amount.

Fourth, the parties' distributions should be adjusted to account for Respondent's payment of taxes on the Property. "Generally, co-tenants share the cost of taxes on the property equally, because those costs benefit all of the co-tenants." *Ponder v. Willey*, 2020 WL 6735715, at *3 (Del. Ch. Nov. 17, 2020), *R&R adopted*, 2020 WL 7043627 (Del. Ch.). "[A] cotenant not in possession . . . has a duty to contribute to the cotenant in possession as to any payments . . . for taxes." *Est. of Davis*, 2023 WL 4482223, at *3 (alteration in original) (citation and internal quotation marks omitted). At the hearing, Respondent testified that from March 25, 2018 through May 25, 2022, she paid $5,000 in taxes on the Property.[43] Because Respondent paid those taxes without contribution from Petitioner, Respondent's share of the proceeds should be increased, and Petitioner's share of the proceeds should be decreased, by half of that amount.[44]

---

[43] *Id*. at 20:1-8.

[44] In his June 7, 2023 submission, Petitioner asks that "the unpaid taxes be deducted from the Respondent's portion of the proceeds from the sale," Dkt. 40 at 1, but at the hearing, Petitioner clarified that he does not seek an adjustment for any unpaid taxes. Tr. at 10:4-11:17.

Finally, Petitioner asks the Court to deduct $461.40 in filing fees from Respondent's share of the proceeds.[45] "'Under the American Rule and Delaware law, litigants are normally responsible for paying their own litigation costs[]' . . . ." *Ponder*, 2020 WL 6735715, at *6 (citation omitted). "Equitable exceptions to the American Rule include the bad faith exception, as well as the 'common fund doctrine' and the related 'common benefit doctrine,' which are based 'on the equitable principle that those who have profited from a litigation should share its costs.'" *Id*. (citation and footnote omitted). Petitioner does not specify a basis for shifting costs. To the extent Petitioner contends that Respondent's conduct during the First Sale supports cost-shifting, Magistrate Griffin's May 25, 2022 Order already remedied the harm from such conduct. And to the extent Petitioner seeks costs under the common benefit doctrine, this action did not work a benefit that would support cost-shifting. *See In re the Real Prop.: Tax Parcel No. 26-012.20-080 generally known as 2300 W. Seventeenth St., Wilmington DE 19807*, 2021 WL 4999114, at *3 (Del. Ch. Oct. 20, 2021) (explaining that "in a typical partition action, neither party produces a benefit that does not already exist"). I therefore recommend that the Court exercise its discretion to deny Petitioner's request for filing fees.

---

[45] Dkt. 40 at 2.

13

## III. CONCLUSION

Based on the analysis above, Petitioner is entitled to $78,157.74 and Respondent is entitled to $13,157.74 from the proceeds of the partition sale. The following tables summarize the calculations. This is a final report under Court of Chancery Rule 144(a). Any exceptions to this report must be filed within eleven days.[46]

| Proceeds From Second Sale | $95,336.49 |
|---|---|
| Remaining Expenses From First Sale | ($4,021.00) |
| Proceeds Remaining for Distribution | $91,315.49 |

| Petitioner Patrick J. Connell | | Respondent Christina Klebart | |
|---|---|---|---|
| 50% Interest | $45,657.74 | 50% Interest | $45,657.74 |
| Credit for Expenses From First Sale | $5,000.00 | Debit for Expenses From First Sale | ($5,000.00) |
| Credit for Rent | $30,000.00 | Debit for Rent | ($30,000.00) |
| Debit for Taxes | ($2,500.00) | Credit for Taxes | $2,500.00 |
| **Distribution to Petitioner:** | **$78,157.74** | **Distribution to Respondent:** | **$13,157.74** |

---

[46] *See* Ct. Ch. R. 144(d)(1) ("In actions that are not summary in nature or in which the Court has not ordered expedited proceedings, any party taking exception shall file a notice of exceptions within eleven days of the date of the report."). Pursuant to Court of Chancery Rule 144(c), "[i]f the Magistrate in Chancery files a draft report, then the only exceptions that a party may take to a final report are (i) exceptions to the draft report that were timely filed and disallowed and (ii) exceptions to any differences between the draft report and the final report." Ct. Ch. R. 144(c). I note that the parties did not file exceptions to the January 16 Draft Report and there are no substantive differences between the January 16 Draft Report and this final report.