**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

NATHAN A. COOK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 2, 2025

Michael A. Barlow
Hayden J. Driscoll
Quinn Emanuel Urquhart &
  Sullivan, LLP
500 Delaware Avenue, Suite 220
Wilmington, DE 19801

David J. Margules
Elizabeth A. Sloan
Ballard Spahr LLP
919 North Market Street, 11th Floor
Wilmington, DE 19801

Raymond J. DiCamillo
Daniel E. Kaprow
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Albert H. Manwaring, IV
Albert J. Carroll
Alena V. Smith
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801

Megan Ward Cascio
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, 16th Floor
Wilmington, DE 19801

RE: *Joint Stock Company Commercial Bank PrivatBank v. Igor Valeryevich Kolomoisky, et al.,*
C.A. No. 2019-0377-NAC

Dear Counsel:

This letter addresses the preclusive effects of actions filed by certain Ukrainian entities against Plaintiff Joint Stock Company Commercial Bank PrivatBank ("PrivatBank") in Ukraine.

For the reasons described below, the Kyiv Commercial Court's fact findings as to Loan Agreement No. 4H09129Д in Case No. 910/14224/20 are binding on

PrivatBank in this action.  So PrivatBank is precluded from relitigating those fact findings here.  At this time, I am deferring ruling on the preclusive effects of the other actions brought against PrivatBank in Ukraine because the parties did not argue those judgments were legally binding as of their last filings.

## I.     BACKGROUND

Defendants Igor Valeryevich Kolomoisky and Gennadiy Borisovich Bogolyubov founded PrivatBank in March 1992.[1]  Kolomoisky and Bogolyubov were PrivatBank's majority and controlling stockholders from at least 2006 through December 2016, when the Ukrainian banking regulator, the National Bank of Ukraine, declared PrivatBank insolvent.[2]  The Ukrainian State subsequently nationalized PrivatBank to protect the bank's 20 million customers and "preserv[e] the stability of [Ukraine's] financial system."[3]

---

[1] *Joint Stock Company Commercial Bank PrivatBank v. Igor Valeryevich Kolomoisky, et al.*, C.A. No. 2019-0377-NAC, Docket ("Dkt.") 146, Verified Second Amended Complaint ("SAC") ¶ 7.  In this letter decision, I include a small subset of Plaintiff's many allegations as background, to the extent relevant and for ease of understanding.  For a more detailed discussion, readers may review this Court's August 23, 2021 Memorandum Opinion.  *See Joint Stock Co. Com. Bank PrivatBank v. Kolomoisky,* 2021 WL 3722095 (Del. Ch. Aug. 23, 2021) ("Mem. Op.").  That said, any such allegations are not findings of fact; indeed, nothing in this letter decision should be read as a finding of fact *except* to the limited extent specified herein, i.e., as to the specific facts being given preclusive effect.

[2] SAC ¶¶ 2, 7, 56, 222.

[3] *Id.* ¶ 222 (first alteration in original).

In May 2019, Plaintiff brought this action, alleging that Kolomoisky and Bogolyubov had acquired hundreds of millions of dollars' worth of United States assets by misappropriating and laundering the proceeds of commercial loans issued by PrivatBank.[4] Plaintiff's Verified Second Amended Complaint (the "Complaint") contains eight counts, including counts for unjust enrichment, fraudulent transfer, violations of Ohio's RICO statute, conspiracy to violate Ohio's RICO statute, and civil conspiracy.[5]

Plaintiff's Delaware lawsuit was one of many relating to PrivatBank's loan book and the events leading up to PrivatBank's nationalization filed around the world.[6] Other lawsuits were filed in Ukraine, London, Israel, Cyprus, and Switzerland.[7] Of relevance here are certain actions brought in the Kyiv Commercial Court against PrivatBank by borrowers identified in Plaintiff's Complaint (the "Borrower Actions").[8] Those borrowers include Joint Stock Company Nikopol Ferroalloy Plant ("Nikopol"), Joint Stock Company Zaporizhzhia Ferroalloy Plant,

---

[4] *E.g.*, Dkt. 1, Verified Compl. ¶ 1.

[5] SAC ¶¶ 226–305.

[6] Mem. Op. at *4.

[7] *Id.* at *4 n.35.

[8] *See, e.g.*, Dkt. 309, Transmittal Aff. of Albert H. Manwaring, IV, Esq., in Supp. of Defs.' Suppl. Letter on the Preclusive Effects of the Borrower Actions ("Manwaring Aff. __") Ex. 8 ("Eighth Marchenko Decl.") at 1 n.1; *see also* Manwaring Aff. Ex. 10 ("Third Bektov Decl.") at 4 n. 1.

Joint Stock Company Stakhanov Ferroalloy Plant, Joint Stock Company Marganets Mining and Processing Industrial Complex, Joint Stock Company Pokrovsky Mining and Processing Industrial Complex, and Joint Stock Company Dniproazot.[9] In each Borrower Action, the borrower claimed that by identifying it in its allegations before this Court, PrivatBank failed to recognize that the borrower had properly fulfilled its obligations under the corresponding loan agreement.[10]

For instance, PrivatBank's complaint identifies Loan Agreement No. 4Н09129Д,[11] which provided a line of credit for Nikopol.[12] PrivatBank alleges that rather than using the proceeds from this line of credit to finance its current activities—as required by the loan agreement—Nikopol laundered the proceeds through Defendant Chemstar Products LLC.[13] In response to these allegations, Nikopol brought Case No. 910/14224/20 before the Kyiv Commercial Court seeking a declaration that its obligations under Loan Agreement No. 4Н09129Д had been

---

[9] Eighth Marchenko Decl. at 1 n.1.

[10] Dkt. 259, Fifth Suppl. Decl. and Report of Roman Marchenko ("Fifth Marchenko Decl.") ¶ 4.

[11] SAC ¶¶ 148–49.

[12] *See, e.g.*, Manwaring Aff. Ex. 2 ("Kyiv Com. Ct. Decision, Case No. 912/144224/20, dated Jan. 22, 2021") at 2.

[13] SAC ¶¶ 148–49.

terminated due to proper performance (the "First Nikopol Action").[14]  Upon reviewing

evidence submitted by Nikopol, including "detailed accounting source documents"

regarding the use of the proceeds and the sources of repayment,[15] the Kyiv

Commercial Court concluded that Nikopol timely repaid the loan with funds from its

business activities and the guarantor and used the proceeds to purchase ore from

Chemstar Products LLC.[16]  Accordingly, the court ruled that Nikopol's obligations

under Loan Agreement No. 4H09129Д were "terminated due to proper

performance."[17]  PrivatBank subsequently appealed the Kyiv Commercial Court's

decision,[18] as did the Cabinet of Ministers of Ukraine.[19]  But those appeals were

denied, and Ukraine's highest court, the Grand Chamber of the Supreme Court,

---

[14] Kyiv Com. Ct. Decision, Case No. 912/144224/20, dated Jan. 22, 2021 at 1; *see also* Manwaring Aff. Ex. 3 ("Seventh Marchenko Decl.") ¶¶ 15–16.

[15] Kyiv Com. Ct. Decision, Case No. 912/144224/20, dated Jan. 22, 2021 at 5, 9; Seventh Marchenko Decl. ¶ 17.

[16] Kyiv Com. Ct. Decision, Case No. 912/144224/20, dated Jan. 22, 2021 at 5–9; *see also* Eighth Marchenko Decl. ¶ 30.

[17] Kyiv Com. Ct. Decision, Case No. 912/144224/20, dated Jan. 22, 2021 at 13; Dkt. 309, Letter to the Honorable Nathan A. Cook from Albert H. Manwaring, IV, Esq., dated Apr. 18, 2024 ("Defs.' Apr. 18, 2024 Letter") at 6; Dkt. 312, Pl.'s Suppl. Letter on the Preclusive Effects of the Borrower Actions, dated May 16, 2024 ("Pl.'s May 16, 2024 Letter") at 7–8.

[18] *See e.g.*, Seventh Marchenko Decl. ¶¶ 22–28.

[19] *See* Manwaring Aff. Ex. 7 ("Northern Com. Ct. of App. Decision, Case No. 910/14224/20, dated Mar. 4, 2024") (closing the Cabinet of Ministers' appeal); Eighth Marchenko Decl. ¶¶ 18–20; Third Beketov Decl. ¶ 42.

ultimately upheld the Kyiv Commercial Court's decision.[20] The Grand Chamber's ruling is final and not subject to appeal by the parties.[21]

As of the parties' last filings, the First Nikopol Action was the only Borrower Action in which the proceedings had largely concluded.[22] Although defendants had argued that the Kyiv Commercial Court's findings in Case No. 910/12559/20 (the "Second Nikopol Action") should be given preclusive effect,[23] the Grand Chamber of the Supreme Court recently remanded the case to the Commercial Court of Appeal for reconsideration.[24]

---

[20] *See* Manwaring Aff. Ex. 6 ("Grand Chamber Decision, Case No. 910/14224/20, dated Oct. 19. 2022") at 20 (dismissing PrivatBank's Appeal and upholding the judgment of the Kyiv Com. Court and the Northern Com. Ct. of App.); Seventh Marchenko Decl. ¶¶ 6, 64; Northern Com. Ct. of App. Decision, Case No. 910/14224/20, dated Mar. 4, 2024 (dismissing the Cabinet of Ministers' appeal).

[21] Grand Chamber Decision, Case No. 910/14224/20, dated Oct. 19, 2022 at 20 (noting decision is "final and not subject to appeal").

[22] *See* Dkt. 321, Letter to the Honorable Nathan. A. Cook. from Albert H. Manwaring, IV, Esq., dated Dec. 5, 2024 ("Defs.' Dec. 5, 2024 Letter") (indicating that the Supreme Court remanded the Second Nikopol Action); Defs.' Apr.18, 2024 Letter at 2 ("the other [B]orrower [A]ctions remain pending in the Ukrainian trial courts or intermediate appellate court").

[23] *See e.g.*, Dkt. 259, Defs.' Submission on the Preclusive Effect of the Borrower Action at 15.

[24] Defs.' Dec. 5, 2024 Letter at 1–2; Dkt. 322, Letter to the Honorable Nathan A. Cook from Albert H. Manwaring, IV, Esq., dated Jan. 9, 2025 Ex. A ¶¶ 8.1–8.4.

## II.     ANALYSIS

In Delaware, "the preclusive effect of a foreign judgment is measured by [the] standards of the rendering forum."[25]  Because Ukraine is the rendering forum, this Court applies Ukrainian law to determine what preclusive effect, if any, should be given to the factual findings in the First Nikopol Action.

### A.     Ukrainian Issue Preclusion

Article 75(4) of the Commercial Procedure Code of Ukraine covers issue preclusion.[26]  Under the Code, issue preclusion generally "prevents a person or entity from relitigating an issue already determined in another court case in which it participated."[27]

For a Ukrainian court's fact findings to have preclusive effect in subsequent litigation, three conditions must be satisfied.[28]  First, the court's decision must be

---

[25] *Columbia Cas. Co. v. Playtex FP, Inc.*, 584 A.2d 1214, 1217 (Del. 1991) (citing *Bata v. Bata*, 163 A.2d 493, 504 (Del. 1960)).

[26] Eighth Marchenko Decl. ¶ 14; Manwaring Aff. Ex. 4 ("Beketov Dep.") 40:10–17 *see also* Manwaring Aff. Ex. 9 ("Trans. Ukr. C. of Com. Procedure") at 8 ("Any facts established by a valid court judgment that was rendered in commercial, civil or administrative proceedings are not to be proved in adjudication of another case in which the same person or persons in relation to whom such facts were established is or are involved, unless otherwise prescribed by law.").

[27] Fifth Marchenko Decl. ¶ 55; *see also* Beketov Dep. 16:8–17.

[28] Fifth Marchenko Decl. ¶¶ 9, 56.

binding.[29]  Second, the facts must have been investigated by the court and recorded in the reasoning part of its decision.[30]  And, third, the findings of fact must have been made in a proceeding in which the party against whom preclusion is sought participated.[31]

**B.      The Factual Findings in the First Nikopol Action Satisfy All Three Requirements for Issue Preclusion**

The parties do not meaningfully dispute that the Kyiv Commercial Court's decision in the First Nikopol Action is now binding.[32]  Nor do they dispute that PrivatBank was a party to the First Nikopol Action.[33]  So the first and third conditions are satisfied.

For the second condition to be satisfied, "the facts must have been investigated by the court and set forth in the reasoning part of its judgment."[34]  Here, the Kyiv

---

[29] *Id.* ¶ 56.1; Dkt. 312, Transmittal Aff. of Michael A. Barlow, Esq., in Supp. of Pl.'s Suppl. Letter on the Preclusive Effects of the Borrower Actions Ex. 5 ("Second Beketov Decl.") ¶ 8.

[30] Fifth Marchenko Decl. ¶¶ 12, 56.2.

[31] *Id.* ¶ 56.3; *see also* Trans. Ukr. C. of Com. Pro. at 8.

[32] Dkt. 313, Letter to the Honorable Nathan A. Cook from Albert H. Manwaring, IV, Esq., dated May 30, 2024 ("Defs.' May 30, 2024 Letter") at 4; *see* Dkt. 312, Pl.'s Suppl. Letter on the Preclusive Effects of the Borrower Action, dated May 16, 2024 ("Pl.'s May 16, 2024 Letter") at 15 (referring to the First Nikopol Action as a "binding decision"); *see also* Beketov Dep. 42:2–50:25; 124:10–125:8.

[33] Defs.' May 30, 2024 Letter at 4; *see* Pl.'s May 16, 2024 Letter; *see also* Beketov Dep. 54:9–15, 112:15–113:5.

[34] Seventh Marchenko Decl. ¶ 55; *see also* Pl.'s May 16, 2024 Letter at 3 n.5.

Commercial Court made factual findings (which the parties agree are set forth in the reasoning part of its judgment)[35] that Nikopol used the loan to finance its "current activities," and fully repaid the loan with funds obtained through "business activities" or from the guarantor.[36] To make those findings, the Commercial Court reviewed "accounting source documents" and identified the underlying transactions, which it outlined in its decision in detail.[37] Thus, the second condition is also satisfied and issue preclusion applies.[38] So PrivatBank is bound by the Kyiv Commercial Court's findings of fact in the First Nikopol Action—including the court's findings regarding

---

[35] Seventh Marchenko Decl. ¶¶ 64–65; Beketov Dep. 65:25–68:8; *see also* Second Beketov Decl. ¶ 13 (acknowledging that the Commercial Court's references to the use of loan proceeds and sources of repayment are factual findings that are set forth in the reasoning part of the decision but arguing that these factual findings were "superfluous").

[36] Seventh Marchenko Decl. ¶ 64; *see also* Third Beketov Decl. ¶ 25.

[37] Kyiv Commercial Ct. Decision, Case No. 912/144224/20, dated Jan. 22, 2021, at 5–7, 9–10.

[38] Plaintiff's expert, Oleh Beketov, asserts that issue preclusion under Ukrainian law "only applies to findings of fact that are integral to a court's determinative reasoning in reaching its decision" and are within the "subject of proof." *See, e.g.*, Third Beketov Decl. ¶¶ 10, 14. To this end, Mr. Beketov contends that "the Kyiv Commercial Court's conclusions that the funds Nikopol received under the loan agreement were used for 'business activities' as well as its conclusions regarding the source of the funds used to 'repay' the loans are all superfluous in determining whether the Borrowers have 'properly performed' under the loan agreements at issue" and should not be given preclusive effect. *Id.* ¶ 35. But, as defendants' expert explains, "the Court of Appeal and the Grand Chamber rejected PrivatBank's argument that the Commercial Court's factual findings went beyond the scope of Nikopol's Claims. Those rulings contradict Mr. Beketov's view that those factual findings were superfluous." Eighth Marchenko Decl. ¶ 5; *see also* Grand Chamber Decision, Case No. 910/14224/20, dated Oct. 19. 2022 ¶¶ 52, 115 (rejecting PrivatBank's argument that the Commercial Court established circumstances outside the subject of proof and concluding that the Commercial Court and Court of Appeal's decisions "were made in compliance with the substantive and procedural law").

Nikopol's use of the loan and the sources of repayment—and cannot relitigate those fact findings in this action.[39]

That said, there is a bit of a procedural morass here. This Court previously stayed this action in favor of the Borrower Actions and other Ukrainian litigation,[40] with the caveat that this Court would continue to address certain procedural issues—including the preclusive effect of Ukrainian judicial decrees or judgments.[41] Defendants now ask that I dismiss any claims relating to the loan since "neither PrivatBank nor Mr. Beketov has ever explained how PrivatBank possibly could maintain a claim concerning Loan 4[Н]09129[Д] if it is precluded from asserting that Nikopol did not use that loan for its stated purpose."[42] But, at this stage, my ruling

---

[39] As defendants' expert concedes, the Commercial Court did not make findings about either the ultimate use of funds or the ultimate source of funds. Manwaring Aff. Ex. 11 145:5–12; *see also,* Kyiv Com. Ct. Decision, Case No. 912/144224/20, dated Jan. 22, 2021. Under Ukrainian law "the absence of a factual finding does not give rise to a claim for issue estoppel." Third Beketov Decl. ¶ 30. Thus, PrivatBank is not barred by the Commercial Court's decision in the First Nikopol Action from making arguments regarding either the ultimate use of proceeds from Loan Agreement No. 4Н09129Д or the ultimate source of the funds used to repay Loan Agreement No. 4Н09129Д.

[40] Mem. Op. at 1.

[41] *Id.* at 1–2 ("[N]otwithstanding the stay, the Court will continue to address certain procedural issues still in dispute to ensure this action moves as expeditiously as possible should rulings in Ukraine justify a lift of the stay. Those issues include whether process was effectively served, whether this Court has personal jurisdiction over certain Defendants and the preclusive effect of certain Ukrainian judicial decrees or judgments."). The parties stipulated that briefing on service of process and personal jurisdiction was unnecessary. *See* Dkt. 251, Order Governing Schedule for Litigating Identified Issues.

[42] Defs.' Apr. 18, 2024 Letter at 17.

is limited to solely the procedural issues that Vice Chancellor Slights explained would continue to be litigated while the stay is in place: the preclusive effect of Ukrainian litigation on this action.[43]

Defendants might be right. It may very well be the case that PrivatBank will ultimately be unable to maintain such a claim considering the Kyiv Commercial Court's fact findings in the First Nikopol Action. But, at this time, I address only the preclusive effects of the First Nikopol Action and not whether PrivatBank's claims related to Loan Agreement No. 4H09129Д should be dismissed.

## III.  CONCLUSION

For the foregoing reasons, the Kyiv Commercial Court's fact findings in Case No. 910/14224/20 are binding on PrivatBank in this action. IT IS SO ORDERED.

Sincerely,

*/s/ Nathan A. Cook*

Nathan A. Cook
Vice Chancellor

---

[43] To go beyond the limited issues that Vice Chancellor Slights carved out of the stay would also risk procedural confusion as I note that at the November 15, 2022 hearing on the preclusive effect of the Borrower Actions, Plaintiff's counsel expressed that "it's unclear whether we are [here] on a motion to dismiss or a motion for summary judgment." Dkt. 282, Tr. of Nov. 15, 2022 Oral Arg. on Defs.' Submission on the Preclusive Effect of the Borrower Actions 55:18–19.